# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

| | |
|---|---|
| SAMUEL BACK,<br>on Behalf of Himself and All<br>Others Similarly-Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>RAY JONES TRUCKING, INC.,<br>TERESA JONES, GRANT JONES and<br>STEVEN JONES,<br><br>*Defendants.* | **PROPOSED COLLECTIVE ACTION<br>UNDER FLSA AND CLASS ACTION<br>UNDER KWHA**<br><br>CASE NO.  4:22-cv-5-JHM<br><br><br><br>**JURY DEMANDED** |

## MOTION TO FACILITATE NOTICE PURSUANT TO 29 U.S.C. § 216(b)
### (MOTION FOR CONDITIONAL CERTIFICATION)

Comes Plaintiff, Samuel Back, by and through counsel, and moves the Court to approve notice pursuant to 29 U.S.C. § 216(b) to persons similarly situated to Plaintiff Samuel Back with respect to his allegations that the Motor Carrier's Act ("MCA") exemption to the Fair Labor Standards Act ("FLSA") does not apply and that Defendant therefore violated the FLSA in failing to pay overtime compensation to its truck driver employees.  Specifically, Plaintiff requests that the Court approve the sending of a notice (a proposed version of which is attached hereto as Exhibit 1[1]) to the following collective:

> All persons who were employed by Ray Jones Trucking, Inc. as a truck driver and were not paid overtime compensation for work performed in excess of forty hours in one or more workweeks within the three years preceding this notice.

---

[1]  The proposed notice is based on the notice approved by the Court in in *McClurg v. Dallas Jones Enterprises, Inc.*, No. 4:20-cv-201 (December 3, 2021). The notice would be accompanied by a consent form, a proposed version of which is attached as Exhibit 2.

## I. Summary

This motion presents a situation in all meaningful respects identical to that decided recently by this Court in granting a motion for notice to be sent to similarly-situated employees in *McClurg v. Dallas Jones Enterprises, Inc.*, No. 4:20-cv-201.[2]  Plaintiff asserts that Defendant employed truck driver employees who drove solely in **intra**state commerce (and the trucking company itself has made the same assertion to the Federal Motor Carrier Safety Administration), and the drivers worked overtime, but the company did not pay overtime compensation because it incorrectly asserted that the Motor Carrier's Act exemption (relating to **inter**state trucking) to the Fair Labor Standards Act applied.  Under these circumstances, the Court should approve the sending of a notice to the similarly-situated drivers so they can be apprised of this FLSA collective action and determine whether or not to join pursuant to 29 U.S.C. § 216(b).

---

[2] Indeed, the defendant in *McClurg* conflated itself in filings in the *McClurg* case with the Defendant in the present case.  See Case 4:20-cv-201 Ct. Docs. 14-1 at 3 (arguing certain bankruptcy schedules included "a service contract with [Dallas Jones Enterprises, Inc.]"), 16 at 12, first bullet point, 16-3 at, Contract 2.82 (schedule listing contract with "Ray Jones Trucking, Inc."); and 19 at 7 ("counsel [for Dallas Jones Enterprises, Inc.] regrets … errors…. [T]here does not appear to be a reference to [Dallas Jones Enterprises, Inc.] in the bankruptcy schedules…."); *see also Ray Jones Trucking, Inc. v. Kentucky Auto. Ins. Plan*, No. CIV A 307-CV-15-KKC, 2007 WL 1309616, at *1 (E.D. Ky. May 4, 2007) (Defendant and Dallas Jones Enterprises, Inc. initiating litigation together against insurer).  Apparently, the founders of the two trucking companies (and the current management) are related by blood and/or marriage.

## II. The Conditional Certification Standard

The Supreme Court has approved of district courts ordering notices to be sent to similarly-situated employees under 29 U.S.C. § 216(b),[3] a process commonly referred to as "conditional certification," while at the same time noting that "[t]he ***sole consequence*** of conditional certification is the sending of court-approved written notice to employees, ... who in turn become parties to a collective action only by filing written consent with the court, § 216(b)." *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1530 (2013) (emphasis added).

Since this relief is appropriately granted early in the case at the beginning of discovery,[4] the standard that Plaintiff must meet under the FLSA for such relief is "fairly lenient" and "typically results in conditional certification of a representative class." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (quoting *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)). At this early stage before discovery has been completed, the Court merely determines whether Defendant's employees were "allegedly subject to a common practice which may have resulted in FLSA overtime violations." *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011). "The proper inquiry is simply whether plaintiffs are similarly situated ***with respect to their allegations that the law has been violated***." *Id.* (emphasis in original; citations omitted).

---

[3] The Supreme Court has observed that the benefits of a Section 216(b) collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989). Under 29 U.S.C. § 216(b), a district court may "facilitat[e] notice to potential plaintiffs." *Id.* at 169.

[4] This Court has appropriately (and repeatedly) rejected the approach of the Fifth Circuit in *Swales v. KLLM Transport Service, L.L.C.*, 985 F.3d 430 (5th Cir. 2021). *See York v. Velox Express, Inc.*, 524 F. Supp. 3d 679, 685 (W.D. Ky. 2021); *Branson v. Alliance Coal, et al.*, Doc. 167 in No. 4:19-cv-155 (April 20, 2021); *McClurg v. Dallas Jones Enterprises, Inc.*, No. 4:20-CV-00201-JHM, 2021 WL 5763563, at *3 (W.D. Ky. Dec. 3, 2021).

### III. Plaintiff Alleges a Common Policy of Defendant Violating the FLSA Because Defendant Relied on the MCA Exemption in Not Paying All Its Drivers Overtime Compensation, and Plaintiff Alleges All Drivers Were Not Subject to the MCA Exemption.

As a description of even the basics facts (i.e., those facts which can be the subject of a modest factual showing at the outset of the case and without the benefit of discovery) makes clear, Plaintiff alleges that Defendant engaged in a common policy of violating the FLSA by employing truck drivers on an "intrastate only" basis, working the drivers overtime, and yet failing to pay them overtime compensation in reliance on the inapplicable MCA "interstate commerce" exemption.

Specifically, Defendant is a trucking company that employs many truck drivers.[5] Plaintiff and the Defendant's other truck driver employees worked more than forty hours per week in many workweeks.[6] When they would work more than forty hours in a week, the employees would not be paid by Defendant at a different rate for the beyond-forty-hours work than they were paid for

---

[5] See Ct. Doc. 1-4 (Defendant's FMCSA Company Snapshot reflecting that as of May 12, 2020 it employed 23 drivers in an "Intrastate Only (Non-HM)" operation).

[6] Complaint at ¶¶ 52-53; Answer, Ct. Doc. 22 at ¶¶ 52-53; Declaration of Samuel Back, attached hereto as Exhibit 3, at ¶ 18. Notably, Defendant now admits these allegations, Ct. Doc. 22 at ¶¶ 52-53, despite previously stating that lacked "sufficient information to admit or deny" the allegation that workers performed overtime work. Ct. Doc. 9 at Response to Complaint ¶¶ 52-53 (responding to allegation that "Plaintiff worked more than forty hours in one or more workweeks in the three years preceding the filing of this Complaint" and "the similarly-situated drivers each worked more than forty hours in at least one workweek for which wages (but not overtime wages) were paid in the last three years" by stating that "Defendants are *without sufficient information to admit or deny* the allegations… and therefore, deny the same") (emphasis added). Plaintiff did not provide Defendant with new information on this point since the Court directed Defendant to provide a Rule-8-compliant answer. If Defendant wants to argue that its answer (or other unilateral assertions that have not been tested by discovery) should prevent conditional certification, that should be rejected because merits disputes are generally decided at the de-certification stage, after discovery, and not at the conditional certification stage. However, to the extent the Court was inclined to consider Defendant's assertions at this time, it should weigh them in light of previous Defendant's willingness, before the Court indicated it intended to enforce Rule 8, to state incorrectly that it lacked sufficient information to admit Plaintiff and other workers worked overtime (something it now admits its own records show).

work in the first forty hours of the week.[7] Instead, workers were paid the same per-ton rate of pay for work, whether the work was before or after forty hours in a workweek.[8]

Defendant contends that the MCA exemption applied to Plaintiff's work, *id.*, and, indeed, to the work of all of its drivers.[9] However, Defendant has represented to the United States Department of Transportation that it and every one of its truck driver employees are **not** operating in interstate commerce.[10] This contrasts starkly with Triple J. Trucking, Inc., a trucking company operated by the same management (Defendants Teresa Jones, Grant Jones and Steve Jones) out of

---

[7] Back Dec. at ¶¶ 13-17; Complaint ¶¶ 51-55; Answer, Ct. Doc. 22, at Response to Complaint at ¶ 53, ¶¶ 54-55 ("Defendants admit that they did not pay Plaintiff Samuel Back or any other trucks drivers a different rate when he worked more than forty hours in a workweek, but denies that any different wage was owed").

[8] Answer, Ct. Doc. 22, at ¶ 50 ("Defendants admit so much of the allegations contained in Paragraph 50 of Plaintiffs' Complaint that state that Defendant Ray Jones Trucking paid the drivers based upon a formula that was derived from the amount paid to Defendant Ray Jones Trucking by its customers, but denies that such compensation method was in violation of the law"); ¶ 51 (admitting that "Defendant Ray Jones Trucking, Inc. was paid for the coal being delivered on a per ton basis, and, therefore, Defendant Ray Jones Trucking, Inc. paid Plaintiff and its other truck drivers employees on a per ton basis for delivering coal"); matters cited in previous footnote.

[9] Ct. Doc. 9 at ¶ 108 (Defendants are exempt from paying Plaintiffs [sic] any overtime wages as demanded in the Complaint"); ¶ 109 ("Plaintiffs' [sic] claims are barred by the provisions of the Motor Carrier Act and/or Motor Carrier Exemption [sic]") Ct. Doc. 19 at 1-2 (Defendant asserting that "the issues are well-framed. Plaintiffs seek a determination from this Court that Defendant Ray Jones Trucking misclassified them as exempt employees under the Motor Carrier Act because they only drove within the Commonwealth of Kentucky. *The defense to that claim is that drivers who engage in intra-state travel, only, may still be entitled to the interstate exemption* if the intra-state transportation is part of a "practical continuity of movement" across state lines. Accordingly, the issues are well-framed, and quite narrow") (emphasis added); Answer, Ct. Doc. 22, at ¶ 50 ("Defendants admit so much of the allegations contained in Paragraph 50 of Plaintiffs' Complaint that state that Defendant Ray Jones Trucking paid the drivers based upon a formula that was derived from the amount paid to Defendant Ray Jones Trucking by its customers, but denies that such compensation method was in violation of the law").

[10] See Ct. Doc. 1-4 (Defendant's FMCSA Company Snapshot reflecting Defendant had an "Intrastate Only (Non-HM)" operation); Complaint at ¶¶ 20-33 (detailed allegations regarding content of MCS-150 forms). Notably, Defendant initially improperly responded to these allegations by stating that documents Plaintiff and the Court "speak for themselves," requiring the Court to adjudicate that this was an improper answer. Ct. Doc. 21 at 5-6. Defendant has now responded by admitting it "has completed Forms MCS-150 and submitted said forms to the FMCSA", that it "checked the box 'Intrastate Non-Hazmat Carrier'" and that it "did not check the box labeled 'Interstate Carrier'" in completing its MCS-150 forms. Ct. Doc. 22 at ¶¶ 25, 30-31. Defendant also in response to Paragraph 32 "admits … that it did not identify any drivers as 'Intrastate' under the MCS-150," Ct. Doc. 22 at ¶ 32, but this appears to include a typographical error (use of "intrastate" instead of "interstate"), as Complaint ¶ 32 alleged Defendant "included a number of drivers only under the 'Intrastate' column of …MCS-150… and included no number of drivers (or a zero) under the 'Interstate' column." In other words, since Defendant was making an admission, Defendant apparently intended to "admit" that it did not identify any drivers "as *interstate* under the MCS-150."

the same facility as Defendant at 3296 State Route 181 S, Greenville, KY 4235; Triple J. Trucking, Inc. represented to the United States Department of Transportation that it and its drivers were operating in interstate commerce.[11]

Not only has Defendant itself admitted that it and its drivers are not operating in interstate commerce,[12] but Plaintiff has made his own showing that other drivers were also, like Plaintiff, employed by Defendant as truck drivers, worked overtime, but not paid overtime.[13] Plaintiff has established that the drivers did not drive in interstate commerce; instead, the loads (coal, garbage, and wastewater treatment plant by-product) originated in Kentucky, were driven entirely in Kentucky, and were bound for ultimate destinations in Kentucky.[14] Accordingly, other truck driver employees of Defendant who have become aware of this action have already joined.[15]

---

[11] See FMCSA Company Snapshot for Triple J Trucking, Inc., a copy of which is attached hereto as Exhibit 4 (listing "Interstate" and not "Intrastate Only (Non-HM)" carrier operation and physical address on State Route 181 South); Answer, Ct. Doc. 9 at ¶ 6 (admitting Defendant's principal place of business was at the same State Route 181 South address); Kentucky Secretary of State listing for Defendant, attached hereto as Exhibit 5 (listing Defendant's Vice Presidents as "Teresa Jones, Steve R. Jones and R. Grant Jones" and "principal office" at same address); Kentucky Secretary of State listing for Triple J Trucking, Inc., attached hereto as Exhibit 6 (listing Triple J Trucking, Inc.'s Vice Presidents as "Teresa Jones, Steve R. Jones and R. Grant Jones" and "principal office" at same address).

[12] Plaintiff asserts that Defendant's MCS-150 statements should ultimately be held to have judicial estoppel effect. Plaintiff acknowledges that the Court has concluded in a similar case that defendant's MCS-150 forms do not entitle a driver to judgment as a matter of law under Rule 12(c) under the doctrine of judicial estoppel at the pleadings stage, Ct. Doc. 79 in *McClurg v. Dallas Jones Enterprises, Inc.*, No. 4:20-cv-201; however, here, Plaintiff makes a different argument at this stage: the MCS-150 form of Defendant are both evidence (which Plaintiff may use to meet his modest factual burden at this conditional certification stage) in support of what Plaintiff contends and they say (that Defendant and its drivers did not operate in interstate commerce) and illustrate that Plaintiff's claims and those of the other drivers are based on a common-amongst-employees policy of Defendant which Defendant applied to all of its drivers (thus, those drivers should be notified and permitted to join together with Plaintiff in this collective action both because their claims are similar and because Defendant's defenses, including its defense to the judicial estoppel question, turn on the same facts, including facts regarding Defendant's completion of (and subsequent failure to correct) the MCS-150 forms *relating to Defendant and all Defendant's employees*).

[13] Complaint at ¶¶ 51-55; Back Dec. at ¶¶ 13-18.

[14] Complaint at ¶¶ 41-48; Back Dec. at ¶¶ 1-12.

[15] See Consents of Anthony Spradlin, Brian Garner, and Clarence Dalton, Jr. (Ct. Docs. 8-1, 12-1 and 15-1).

Where an employer subject to the FLSA[16] makes a company-wide decision to not pay an entire class of employees overtime compensation based on its assertion that a specific FLSA exemption applies, but the plaintiff asserts that the exemption did not apply to those employees, then the plaintiff sufficiently alleges that those employees are similarly-situated to Plaintiff such that conditional certification should issue. For instance, in an analogous situation (albeit with a different exemption), one court noted that:

> First and foremost, Plaintiffs have argued, and Defendants do not dispute, that Defendants had a custom, policy, or practice of classifying all sales representatives as exempt without performing any individualized analysis of their job duties. Thus, Defendants have found sufficient similarity in the job duties of their sales representatives that they treat them as one homogenous group for purposes of the FLSA. It is somewhat disingenuous, then, for Defendants to argue that they should be permitted to treat all sales representatives as one group for purposes of classifying them as exempt, but that this Court can only determine the validity of that classification [at the conditional certification stage] by looking to the specific job duties of each individual sales representative.

*Delgado v. Ortho-McNeil, Inc.*, 2007 WL 2847238 at *2 (C.D. Cal. 2007). Courts in the Sixth Circuit similarly have found conditional certification warranted where the Defendant relies on an exemption for all the employees in question, but the Plaintiff's "modest factual showing" suggests

---

[16] Defendant was subject to the FLSA under "enterprise coverage" as it employed two or more employees who worked with or handled goods or materials that had moved in interstate commerce. See 29 U.S.C. § 203(s); Complaint at ¶¶ 8-14 (Defendant's employees handle materials that have moved in interstate commerce, such as the fuel used in the trucks they drive, and the trucks themselves); *See also Sec. of Labor v. Timberline South, LLC*, 925 F.3d 838 (6th Cir. 2019) (logging machinery used by employees constituted materials handled that had moved in interstate commerce and thus logging company subject to enterprise coverage); *see also Bautista Hernandez v. Tadala's Nursery, Inc.,* 34 F. Supp. 3d 1229 (S.D. Fla. 2014) (finding trucks are "materials" for purposes of the FLSA because they were tools or article used by employer in performance of nursery business); *Burman v. Everkept, Inc.,* 2017 WL 1150664 (W.D. Mich. Mar. 27, 2017) (finding trucks and component parts used by waste collection company were "materials" for purposes of §203(s) because they were essential to employer's collection operations). Notably, this question (of whether goods and materials used by certain of the employer's employees were moved at any time by any person in interstate commerce) is a different "interstate commerce" question than that arising under the Motor Carrier's Act, which focuses on whether the *freight* moved by the company moves in interstate commerce, and was so moved by the employee to whom the MCA exemption is alleged to apply. Further, even if Defendant somehow now denies that it was subject to enterprise coverage (Defendant suggested previously that it agreed enterprise coverage applied; Ct. Doc. 19 at 2-3), since enterprise coverage applies, by definition, to Defendant's entire enterprise, Plaintiff's allegation that it applies is a sufficient allegation of a common violation of the FLSA with respect to all of Defendant's employees at the conditional certification stage. *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011) ("[t]he proper inquiry [at the conditional certification stage] is simply whether plaintiffs are similarly situated **with respect to their allegations that the law has been violated**")

the exemption is inapplicable. *See Larson v. Rush Fitness*, 2012 U.S. Dist. LEXIS 189211 (E.D. Tenn. Oct. 17, 2012); *Swigart v. Fifth Third Bank*, 276. F.R.D. 210, 213 (S.D. Ohio 2011) (granting conditional certification where "all persons in the proposed collective class were subject to the same employment classification that Plaintiffs allege violates the FLSA. Fifth Third does not dispute that, prior to January 3, 2011, it classified its MLOs as exempt from the FLSA's overtime requirements").

This Court recently considered a trucking company's arguments that notice should not issue to truck drivers in *McClurg*. Ct. Doc. 59 in Case 4:20-cv-201 in this Court. The Court concluded that where the FMCSA's Company Snapshot shows that the trucking company itself reported to FMCSA that it and its drivers were "intrastate only", and the employee asserts that employees only drive in interstate commerce and that the defendant employer violated the FLSA by not paying overtime based on an assertion that the MCA exemption applied, the employee "unquestionably alleges" that "all potential opt-in plaintiff were subject to the same policy" as "the allegations indicate that [the trucking company] engaged in a single, FLSA-violating policy – a company-wide policy of classifying its truck drivers as exempt under the Motor Carrier's Act despite the fact that [the trucking company] strictly operates in intrastate commerce." *Id.* at 10.

Like the employees in *McClurg,* all of Defendant's truck driver employees are similarly-situated to Plaintiff because whether the work of *any* of Defendant's drivers could possibly be exempt under the MCA exemption turns on the threshold question of whether Defendant was an interstate carrier. *See Sec'y of Labor v. Timberline South, LLC*, 925 F.3d 838, 850 (6th Cir. 2019) (the Secretary of Transportation possesses the power to regulate an employee if the employee "(1) … works *for a motor private carrier that transports property in interstate commerce* and (2) [the employee's] work activities affect the safety of operation of that motor carrier"; "the dispositive

inquiry is whether Timberline's drivers transport goods in interstate commerce, thus rendering Timberline a private motor carrier"); 29 C.F.R. § 782.2(a); *see* 49 U.S.C. §§ 31502(b)(2); 13102(15).

While the ultimate question of whether Defendant was or was not an interstate carrier is a merits determination that need not and should not be reached at this preliminary conditional certification stage,[17] reviewing the basics of this threshold issue demonstrates that *all* of Defendant's truck driver employees are similarly-situated to Plaintiff in connection with Plaintiff's claim that the MCA exemption did not apply to the work of Defendant's truck drivers because Defendant was not a motor carrier.

Specifically, the MCA exemption to the FLSA is contained in 29 U.S.C. § 213(b)(1), which provides that the FLSA's overtime compensation provisions "shall not apply with respect to… any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49." 49 U.S.C § 31502, in turn, provides that the Secretary of Transportation "may prescribe requirements for… qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." Further, "49 U.S.C. § 13501(1) limits the jurisdiction of the Secretary to 'transportation by motor carrier' between states, and between 'a State and another place in the same State through another State.'" *Quartararo v. J. Kings Food Service Professionals, Inc.*, 2021 WL 1209716 (E.D. N.Y. March 31, 2021).[18]

---

[17] During the conditional certification stage, courts do not consider the merits of the claims, resolve factual disputes, or evaluate credibility. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio. 2011); *see also Lacy v. Reddy Electric Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *3 (S.D. Ohio. Dec. 9, 2011) ("Requiring any more factual support from Plaintiff at this early stage, or weighing [Defendant's] competing factual assertions, would intrude improperly into the merits of the action, essentially imposing a burden upon Plaintiff to prove the factual predicates of her claim as a precondition to obtaining preliminary conditional certification.") (internal citations omitted).

[18] *See also Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869 (3rd Cir. 2015) ("Section 31502(a)(1) applies to transportation 'described in' § 13501, which in turn gives the DOT jurisdiction 'over transportation by motor carrier

Accordingly, in determining whether the MCA exemption to the FLSA applies, a preliminary issue exists relating to whether or not the employer claiming the exemption is a "motor carrier" operating in interstate commerce. In this regard, 29 C.F.R. § 782.1 provides that:

> provisions of the Motor Carrier Act which have a bearing on the scope of section 204 include those which define common and contract carriers by motor vehicle, motor carriers, private carriers of property by motor vehicle (Motor Carrier Act, sec. 203(a) (14), (15), (16), (17), 49 U.S.C. sec. 303(a) (14), (15), (16), (17)) and motor vehicle (Motor Carrier Act, sec. 203(a)(13)); *those which confer regulatory powers with respect to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce* (Motor Carrier Act, sec. 202(a)), as defined in the Motor Carrier Act, sec. 203(a) (10), (11), and *reserve to each State the exclusive exercise of the power of regulation of intrastate commerce by motor carriers on its highways*.

*Id.* (emphasis added). Further, an employer must show that it, itself, is an interstate carrier, in addition to showing that the subject employee was involved in interstate commerce, to benefit from the MCA exemption:

> The exemption of an employee from the hours provisions of the Fair Labor Standards Act under section 13(b)(1) depends both on the class to which his employer belongs and on the class of work involved in the employee's job.[19] The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act (*Boutell* v. *Walling,* 327 U.S. 463; *Walling* v. *Casale,* 51 F. Supp. 520; and see Ex parte Nos. MC-2 and MC-3, in the Matter of Maximum Hours of Service of Motor Carrier Employees, 28 M.C.C. 125, 132), and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public

---

... to the extent that passengers, property, or both, are transported by motor carrier ... between a place in ... a State and a place in another State.'"; *Resch* court addresses MCA exemption, but not question of whether the defendant was "a carrier subject to the DOT's jurisdiction" as in *Resch,* the defendant was "authorized to engage in interstate commerce" and thus "subject to Federal Motor Carrier Safety Administration" and "[t]he parties agree[d] that [the defendant was] a 'motor carrier' subject to the DOT's jurisdiction"); *see also* Ct. Doc. 5-1 (Defendant itself noting that "[t]he Secretary of Transportation… has the power to regulate employees of motor carriers… *when interstate shipments are involved*) (emphasis added), *citing* 49 U.S.C. § 31502 and 31501 (in context of Defendant seeking to conflate different interstate commerce tests under the MCA and FLSA to advance Defendant's argument at the time that FLSA coverage of a trucking company meant that FLSA exemption automatically occurred under the MCA exemption to the FLSA).

[19]   Plaintiff quoted this first sentence of the regulation nearly *verbatim* in the Complaint, but Defendant denied the allegation as "an incomplete characterization of the law." See Complaint at ¶ 15; Ct. Doc. 22 at ¶ 15.

> highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act. *United States* v. *American Trucking Assns.,* 310 U.S. 534; *Levinson* v. *Spector Motor Service,* 330 U.S. 649; Ex parte No. MC-28, 13 M.C.C. 481; Ex parte Nos. MC-2 and MC-3, 28 M.C.C. 125; *Walling* v. *Comet Carriers,* 151 F. (2d) 107 (C.A. 2).

29 C.F.R. § 782.3; *see also* 29 C.F.R. § 782.2(d) ("[t]he limitations… on the regulatory power of the Secretary of Transportation (as successor to the Interstate Commerce Commission) under section 204 of the Motor Carrier Act are also limitations on the scope of the [MCA] exemption. Thus, the exemption does not apply to employees of carriers who are not carriers subject to his jurisdiction…. (*Boutell* v. *Walling,* 327 U.S. 463; *Walling* v. *Casale,* 51 F. Supp. 520)").

Accordingly, where a trucking company registers with the federal government as an "intrastate only" carrier,[20] and thereby asserts that the employer is *not* engaged in interstate commerce under the federal Motor Carrier's Act (and thus not subject to federal jurisdiction), the employer is not a carrier entitled to assert the FLSA's MCA exemption to avoid paying overtime compensation to its employees. *D'Arpa v. Runway Towing Corp.*, 2013 WL 3010810 (E.D. N.Y. 2013); *see also Quartararo v. J. Kings Food Serv. Prof'ls*, 2021 WL 1209716 at *9 ("[a] company's compliance with … USDOT regulations, such as vehicle registrations, often weighs in th[e] analysis" of whether its employees are subject to the MCA exemption; considering that defendant

---

[20]  Intrastate-only trucking companies are not required by federal law to register with the federal government or obtain a United States Department of Transportation number; however, many states, including Kentucky, require such intrastate companies to obtain a federal DOT number. See Kentucky Transportation Cabinet "Intrastate Carriers" webpage (available online at https://drive.ky.gov/motor-carriers/Pages/Intrastate-Carrier.aspx) (last checked August 23, 2021); *see also D'Arpa,* 2013 WL 3010810 at *10 ("in certain states, including New York, 'all registrants of commercial motor vehicles, *even intrastate* and non-Motor Carrier registrants, are required to obtain a USDOT Number as a necessary condition for commercial vehicle registration") (emphasis that of *D'Arpa* court), citing FMCSA website; *Do I Need a USDOT Number?*, FMCSA, U.S. Dept. of Transportation (available online at https://www.fmcsa.dot.gov/registration/do-i-need-usdot-number) ("[a]part from federal regulations, some states require their intrastate commercial motor vehicle registrants to obtain a USDOT Number. These states include… Kentucky"). Accordingly, to meet the requirements of state law, a trucking company may apply to the federal government for a US DOT number, but may do so while indicating that it is applying as "intrastate only." See Ct. Doc. 1-3 (Form MSC-150).

in *Quartararo* was "registered with, and regulated by the FMCSA, a branch of the USDOT, and … *had operating authority to transport goods in interstate commerce*" (emphasis added)).

In *D'Arpa*, the Court had before it in evidence "Company Snapshots" from the Federal Motor Carrier Safety Administration's SAFER system[21] showing that the employer had registered with the FMCSA as an "Intrastate Only" company until 2013, when it registered with the FMCSA as "Interstate." 2013 WL 3010810 at *10. The plaintiffs before the *D'Arpa* court had all worked for the defendant exclusively during the pre-2013 period (i.e., during the period when it had registered with the FMCSA as "Intrastate Only"), *id.* at *5, and the complaint had also been filed during that period. *Id* at *3. Based on this fact, the Court concluded that the Plaintiffs should prevail at the summary judgment stage[22] because the MCA exemption to the FLSA did not apply to the defendant employer, writing that:

---

[21] The *D'Arpa* court noted that:

> The FMCSA's "Company Snapshot" is "a concise electronic record of a company's identification, size, commodity information, and safety record, including the safety rating (if any), a roadside out-of-service inspection summary, and crash information." Safety and Fitness Electronic Records (SAFER) System, FMCSA, U.S. DEP'T TRANSPORTATION, http://safer.fmcsa.dot.gov/companysnapshot.aspx (last visited June 12, 2013). The Company Snapshot is available to the public via the FMCSA's website.

*D'Arpa*, 2013 WL 3010810 at * 10, fn. 25. The FMCSA still provides the same explanation at the same website.

[22] Unlike Defendant here (Plaintiff sought Defendant's agreement to conditional certification, but Defendant did not agree), the defendant in *D'Arpa* had already stipulated to the issue of a notice being sent to similarly-situated employees (conditional certification). *D'Arpa*, 2013 WL 3010810 at * 17. However, the *D'Arpa* court granted, based on the evidence that the defendant had described itself as "intrastate only" the plaintiff's post-discovery motion for a ruling that the plaintiffs were similarly-situated (in effect a preemptive motion for denial of any motion for de-certification, which the Court noted was "unusual in that the second inquiry [regarding whether employees are similarly-situated in an FLSA case] is 'generally precipitated by a defendant's motion for decertification'"). *Id.* at * 17, fn. 33, *quoting Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D 363, 367 (S.D. N.Y. 2007). The court also granted the plaintiffs' class certification under Rule 23 of their claims under state law. *Id.* at *18-22. In the present case, evidence that Defendant, like the employer in *D'Arpa*, itself certified to the FMCSA that it was "intrastate only" will be relevant in later summary judgment and state law class certification proceedings. However, it is important to recall that this case is only at the conditional certification stage. At this preliminary stage, Plaintiff here need only meet a "modest showing" at this conditional certification stage that a similar policy applied to the employees. *Lewis v. Huntington Nat. Bank*, 789 F.Supp.2d 863, 867 (S.D. Ohio 2011). Defendant's policy of not paying overtime based on its assertion that the MCA exemption applied, while at the same time certifying to the FMCSA that it was an "intrastate only" operation not subject to federal jurisdiction, is more than sufficient to meet this minimal burden, *see McClurg*, and notice should promptly issue to the similarly-situated employees.

> Defendants' only evidence[23] in support of the interstate transportation requirement is its own representations to DOT during the period it employed Plaintiffs. These representations were that its operations involved *intrastate* transportation only. Accordingly, I find the motor carrier exemption to be inapplicable to Defendants and deny summary judgment to Defendants on Plaintiffs' FLSA overtime claim on this ground.

*Id.* at *11 (emphasis that of *D'Arpa* court).

Here, like the employer in *D'Arpa*, Defendant has certified to the FMCSA that its entire operation is "Intrastate Only."[24] This is in stark contrast to the representations made by Triple J Trucking, Inc., a company with the same management and principal office address of, Defendant; Triple J. Trucking, Inc. represented to the FMCSA that it was engaged in "Interstate" operations.[25]

Moreover, the SAFER system "Company Snapshot" information did not appear from thin air. Instead, FMCSA inputs the "company's identification" from information holders of U.S. Department of Transportation numbers are required to submit on a specific document: FMCSA Form MCS-150, which provides a combined document consisting of both instructions and a form for applying for a new U.S. Dept. of Transportation number or bi-annual renewal of an existing number.[26]

---

[23] It is worth recalling that the burden of establishing the applicability of (and thus the facts underlying) an exemption to the FLSA is on the employer. *Timberline South*, 925 F.3d at 850.

[24] See footnote 10 above.

[25] See footnote 11 above.

[26] See footnote 21 above relating to the FMCSA "Company Snapshot" and Ct. Doc. 1-3 (MCS-150 Form). This form is also online at the FMCSA website at the following address: https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2021-06/MCS-150%20Form%2012-14-20%20exp%20508.pdf

Defendant used Form MCS-150.[27] The Form MCS-150 was submitted under penalty of perjury.[28] The instructions to Form MCS-150 expressly state that Defendant should "check" or "select" "all that apply" from among the list of categories of "Company Operations" shown in Section 22, which included a category of "Interstate Carrier" and a separate category of "Intrastate Non-Hazmat Carrier". [29]

The instructions to Section 22 of Form MCS-150 expressly stated that Defendant should check "Interstate Carrier" under the following circumstances:

> A. Interstate Carrier – The company is an Interstate Carrier if any part of its operation transports property or passengers in support of interstate commerce, i.e., the property or passengers cross State lines either before the company received them, while the company is transporting them, or after the company has transferred the property or passengers. The transportation of the property or passengers may include transport by plane, train, or boat in addition to the company's commercial motor vehicle. For example: if the origination and destination indicated on the bill of lading – when one exists – are not in the same State, then the shipment is interstate and the company needs to be registered as an Interstate Carrier.

---

[27] Complaint at ¶¶ 20-40; Ct. Doc. 1-3. Although Plaintiff has not yet received a copy of Defendants' Form MCS-150 filings, conditional certification may be based on the allegations of the complaint alone (*see Pritchard v. Dent Wizard Int'l Corp.*, F.R.D. 591, 595-596 (S.D. Oh. 2002); *Belcher v. Shoney's, Inc.*, 927 F. Supp 249, 251 (M.D. Tenn. 1996). Thus, the Court should find the MCS-150 was submitted in accordance with the Company Snapshot and the allegations of the Complaint, especially if Defendant, who has a copy of this form, chooses not to produce it in response to this motion. Indeed, if Defendant fails to provide its Form MCS-150 documents, the Court appropriately should find that the "missing evidence" rule provides additional evidence in Plaintiff's favor supporting the "modest factual showing" necessary for conditional certification, as

> The failure to bring before the tribunal some circumstances, document, or witness, when either the party himself of his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most natural inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party.

2 J. Wigmore, Evidence, § 285 (3d Ed. 1940); *see also Smith v. U.S.*, 128 F. Supp 2d 1227, 1232 (E.D. Ark. 2000); *UAW v. NLRB*, 459 F. 2d 1329, 1339 (D.C. Cir. 1972). Stated another way,

> If a party fails to produce evidence that is under that party's control and reasonably available to that party and not reasonably available to the adverse party, then [a finder of fact] may infer that the evidence is unfavorable to the party who could have produced it and did not.

3 Kevin O'Malley, Jay E. Grenig & William C. Lee, Federal Jury Practice and Instructions § 104.27 (5th Ed. 2000).

[28] Ct. Doc. 1-3 (FMCA Form MCS-150) at last page, ¶ 31 (Certification Statement).

[29] Ct. Doc. 1-3 (FMCA Form MCS-150) at instructions page iii (instructions for § 22), Form MCS-150 Page 1, § 22

> The company is also considered to be an Interstate Carrier if the property or passengers being transported will ever do ANY of the following:
>
> - Cross State lines (including a place outside the United States)
> - Move from the United States or a U.S. territory to a foreign country, or vice versa
> - Have origination and destination points within a State, but pass through another State or foreign country during transport.[30]

Defendant included on the MCS-150 a check in Section 22 to the box labelled "Intrastate Non-Hazmat Carrier"; **Defendant did not check "Interstate Carrier."[31]** Further, Defendant listed a number of drivers (specifically, 23) only under the "Intrastate" column of section 27 of the Form MCS-150, and included no number of drivers or a zero under the "Interstate" column of section 27.[32]

In other words, upon information and belief, Defendant represented to FMCSA under penalty of perjury that Defendant itself and each and every one of its drivers were **not** involved in interstate commerce. It has submitted similar forms prior to and throughout the time Plaintiff was employed with Defendant.[33]

By registering with the federal government as "intrastate only," Defendant avoided the requirements applicable to carriers registered as interstate with the federal government, including being subject to federal DOT audits, *see*, e.g., *Walters v. American Coach Lines of Miami, Inc.*, 576 F.3d 1221, 1227 (11th Cir. 2009), being required to have drivers pass an initial federal DOT

---

[30] Ct. Doc. 1-3 (FMCA Form MCS-150) at instructions page iii (instructions for § 22).

[31] Ct. Doc. 1-5 (Company Snapshot for Defendant); Complaint at ¶¶ 27-29; Ct. Doc. 9 (initial answer stating only that "To the extent the allegations set forth in … Plaintiffs' Complaint refer to a document, said document speaks for itself").

[32] Complaint at ¶ 32; Ct. Doc. 9 (initial answer stating only that "To the extent the allegations set forth in Paragraph 32 of Plaintiffs' Complaint refer to a document, said document speaks for itself").

[33] Ct. Doc. 1-3 (FMCA Form MCS-150) at instructions page i (biennial completion of Form MCS-150 required).

drug test and be subject to random testing thereafter, to pay a DOT-required medical examination every two years, perform DOT-mandated inspections, pass a DOT-required road test, pass a DOT written examination, and maintain (while driving) DOT-required logs, *See, e.g., Guyton v. Schwan Food Co.*, 2004 WL 533942 (D. Minn. 2004).

In short, Defendant wants to have it both ways. When it registered with the federal government, it told the federal government that Defendant was "intrastate only" so that Defendant would not have to comply with federal regulations in connection with its Kentucky-based business. At the same time, its owners had Triple J Trucking, Inc. register as "interstate" so that the profit associated with any interstate business (if it was substantial enough to justify that separate company complying with federal regulations) would not be missed and could be steered to those companies.[34]

Simultaneously, with respect to its obligation to pay employees, Defendant asserts in this action, contrary to its representations to the FMCSA, that it is an interstate carrier with employees operating in interstate commerce and thus can assert the MCA exemption to the FLSA.[35]

---

[34] To be clear, Plaintiff does not seek conditional certification as to employees of Triple J Trucking for the employees' work for Triple J Trucking, Inc. Instead, Plaintiff seeks conditional certification as to the employees of the "intrastate only" Defendant, Ray Jones Trucking, Inc.

[35] Ct. Doc. 19 at 1-2. Plaintiff submits that, even if Defendant could show (contrary to the factual allegations of the Complaint) that it had its drivers operate in interstate commerce without being legally authorized to do so (a merits decision which the Court should not reach at this conditional certification stage), Defendant should be held to be estopped from benefiting from the MCA exemption by claiming in this action that its employees operated in interstate commerce. The reason Defendant should be so estopped is that Defendant has consistently represented to the federal government that it and its employees are *not* operating in interstate commerce, thereby avoiding the federal regulatory scrutiny associated with interstate carriers. Having obtained that benefit from the regulator by saying (under penalty of perjury, no less) it *is not* an interstate carrier, Defendant should not now be permitted to argue that it *is* an interstate carrier and therefore protected by the MCA exemption. *Schultz v. Hydro-Gear Ltd. P'ship*, 202 WL 3527068 (W.D. Ky 202) (the doctrine of judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship"), *quoting Browning v. Levy*, 283 F. 3d 761, 776 (6th Cir. 2002). However, whether or not judicial estoppel applies is, like the underlying question of whether any of Defendant's employees operated in interstate commerce contrary to Defendant's representations, a merits determination that should be reserved for later decision.

The Court does not need to determine at this preliminary stage whether or not Defendant's representation to the FMCSA (that it is "Intrastate Only") is conclusive of its ability to claim, during the later, merits phase of the proceedings, that it is an interstate carrier entitled to the MCA exemption. However, Defendant, in reliance upon the MCA exemption,[36] decided not to pay Plaintiff and its other truck driver employees overtime compensation. Since Defendant's own representations to FMCSA, if true, would make all of Defendant's drivers entitled to overtime compensation (and would make the MCA exemption wholly inapplicable), the Court should find based on these facts alone that Plaintiff has sufficiently alleged and identified a common-amongst-all-employees violation of the FLSA by Defendant. Thus, notice is justified to all employees so that they can be aware of this action and their right to opt-in to the action, should they so desire.

### IV. Defendant's Employees Are Similarly-Situated Because They In Fact Did Not Drive in Interstate Commerce.

Further, setting aside Defendant's own status (and its representations regarding their own status), Plaintiff and the other drivers of Defendant are similarly-situated because they did not drive in interstate commerce, and a driver "is not exempt if his job never involves transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act." *49 C.F.R. 782.3(b),* citing 49 C.F.R §§ 782.2 (d) and (e), 782.7, and 782.8; *see also Mazzarella v. Fast Rig Support, LLC*, 823 F.3d 786, 789-790 and 792 (3d Cir. May 23, 2016) (finding employer did not meet burden of showing driver employees drove in interstate commerce when they transported water used at oil "fracking" wells despite employer's own status as having obtained[37] "certificate

---

[36]  Defendant itself has asserted that it is a "small company" and that it considers that its theories about the MCA exemption apply to "Defendant's drivers," not merely to Plaintiff alone. Ct. Doc. 17 at 5, Ct. Doc. 14-1 at 6 ("Defendant's drivers qualify for the MCA exemption as a matter of law").

[37]  Here, of course, unlike the employer/defendant in *Mazzarella*, Defendant did not obtain authorization from the U.S. Department of Transportation to engage in interstate commerce. See Section III above. However, the point is noted to illustrate that the exemption is also unavailable for the separate, equally exemption-depriving fact that none of the employees in question actually drove in interstate commerce.

issued by the [U.S.] Department of Transportation authorizing [the employer] to 'engage' in transportation as a common carrier… in interstate… commerce,'" noting that "[t]he DOT certificate merely authorizes Defendant to engage in interstate commerce. It provides no information about whether Defendants' drivers actually drove across state lines or otherwise engaged in interstate commerce").

Here, Plaintiff and other driver employees of Defendant drove products solely in Kentucky. Employees were never called upon to drive coal outside of Kentucky. Further, the materials being transported was not in a solely-Kentucky leg of a larger interstate-commerce trip; to the contrary, the materials originated in Kentucky and were destined for Kentucky destinations.

These facts sufficiently allege that Defendant misclassified its employees because those employees did not drive in interstate commerce. Notably, Defendant bears the burden of establishing that an exemption to the FLSA applies, and, thus, where an employer contends employees operated in interstate commerce and were subject to the MCA exemption, the employer bears the burden of establishing that the freight being moved was moving in the stream of interstate commerce. *Mazzarella v. Fast Rig Support, LLC*, 823 F.3d 786 (3d Cir. May 23, 2016) (upholding finding at trial that drivers who drove *intra*state transporting water to and from fracking wells within Pennsylvania not covered by the motor carrier exemption).

Moreover, because conditional certification precedes the completion of discovery, Defendant's denials nevertheless would not negate that Plaintiff has made a modest factual showing (even setting aside and in addition to Defendant's own representations to the federal Department of Transportation, discussed in Section III above) that Plaintiff and the similarly-situated engaged in truck driving work that did not constitute work in interstate commerce.

Accordingly, the Court should authorize notice to be sent to all of Defendant's truck driver employees. A proposed notice is submitted herewith as Exhibit 1. A proposed form of consent is attached hereto as Exhibit 2.

## Conclusion

Applying these principles, this Court should find that Plaintiff has met his lenient burden of demonstrating that Plaintiff and all other truck driver employees of Defendant are similarly situated, and order that notice be issued promptly so all individuals have a chance to opt-in to this lawsuit and toll the statute of limitations on their claims. Though the parties have not yet exchanged discovery, the record already contains a sufficient factual basis, as set forth above, to support Plaintiff's allegation of common FLSA violations by Defendant that affect numerous employees.

Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date indicated on the Court's CM/ECF notice of filing, this document was filed through the Court CM/ECF filing system.

/s/ Mark N. Foster
Mark N. Foster

Case 4:22-cv-00005-GNS-HBB   Document 23   Filed 04/11/22   Page 20 of 20 PageID #: 281