UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:22-CV-00005-GNS-HBB

SAMUEL BACK                                                                    PLAINTIFF
as Proposed Class Representative

v.

RAY JONES TRUCKING, INC. et al.                                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Rule 23 Class Certification (DN 77) and Defendants' Motion to Decertify Plaintiff's Conditionally Certified Class under Section 216(b) of the Fair Labor Standards Act ("FLSA") (DN 78). The motions are ripe for adjudication.[1]

I.      **BACKGROUND**

Samuel Back ("Plaintiff") brought this suit on January 10, 2022, on behalf of himself and "[a]ll [o]thers [s]imilarly-[s]ituated," against Defendants Ray Jones Trucking, Inc. ("Ray Jones") and individuals Teresa Jones, Grant Jones, and Steve Jones (collectively, "Defendants"). (*See* Compl., DN 1). Plaintiff alleges each of these individuals is a "director, part-owner, and managing agent" of Ray Jones. (Compl. ¶¶ 6-7). Plaintiff was an employee driver for Ray Jones who contends he, as well as many other employees, were denied overtime compensation due to them under the Fair Labor Standards Act ("FLSA") and the Kentucky Wage and Hour Act ("KWHA"). (Compl. ¶¶ 1, 70). Ray Jones is a Kentucky corporation that transports commercial materials including coal within the state of Kentucky. (Compl. ¶¶ 11, 45). There is dispute between the

_____

[1] An additional motion before this Court is Defendants' Motion for Partial Summary Judgment (DN 88). Plaintiff's time to respond to this motion has been stayed pending this ruling on Plaintiff's Motion for Rule 23 Class Certification (DN 77). (Agreed Order, DN 91). That stay is now lifted.

parties as to whether some of these materials delivered by Ray Jones drivers were then transported to final destinations outside of Kentucky.  (*See* Pl.'s Mot. R. 23 Class Cert. 16, DN 77; Defs.' Resp. Pl.'s Mot. R. 23 Class Cert 1, DN 80).  Defendants contend that prior to 2021, Ray Jones drivers delivered coal to the premises of another company, ACNR, which "delivered coal by rail and/or barge to out-of-state customers."  (Defs.' Resp. Pl.'s Mot. R. 23 Class Cert. 5).

The parties disagree whether Plaintiff and the other similarly situated employees of Ray Jones fall within an exemption in the Motor Carrier Act ("MCA"), under which employees "driving in interstate commerce for an interstate carrier" are not required to be paid overtime compensation.  (Compl. ¶ 1).  Plaintiff asserts that Ray Jones is not an interstate carrier, that he and the other drivers did not drive in interstate commerce, and thus, the MCA exception does not apply to them.  (Compl. ¶ 1).  Defendants maintain that they did not engage in "intrastate-only commerce," that Plaintiff and the other drivers did engage in interstate commerce under the MCA, and thus the MCA overtime exception applies.  (Defs.' Mot. Decert. 1, 6-10, DN 78).  Plaintiff asserts that he was an employee of Ray Jones "[d]uring a portion of the three (3) year[s] prior to the filing of [the] Complaint (and during a portion of the five (5) year period prior to the filing of [the] Complaint)."  (Compl. ¶ 5).  If this Court determines Ray Jones meets the criteria as an interstate carrier for the pertinent periods, Plaintiff requests that he "and the similarly-situated employees should be awarded overtime compensation for all other time periods."  (Compl. ¶ 48).

In his Complaint, Plaintiff proposed two collective actions, which will be referred as the "FLSA Collective" and the "Rule 23 Class," respectively.  Effectively, the only difference between the two collective actions is that the FLSA Collective seeks recovery under the FLSA for all uncompensated overtime work since January 8, 2019, and the Rule 23 Class seeks recovery for the same damages under the KWHA for all uncompensated overtime work since January 8, 2017.

The first collective action ("Count I")[2] is brought under FLSA Section 216(b), which comprises:

> All current and former truck driver employees of Ray Jones Trucking, Inc. who were not paid at an overtime rate of pay for such employee's work in excess of forty hours in one or more workweeks since January 8, 2019, despite the employee qualifying for overtime compensation.

(Comp. ¶ 56).  The second proposed collective action is a class action under Fed. R. Civ. 23 for violations of KWHA ("Count II")[3], comprising:

> All current and former truck driver employees of Ray Jones Trucking, Inc. who were not paid at an overtime rate of pay for such employee's work in excess of forty hours in one or more workweeks since January 8, 2017, despite the employee qualifying for overtime compensation.

(Compl. ¶ 57).

This Court granted conditional certification for Plaintiff's FLSA Collective Action on June 22, 2022, which was the first step in a two-step process commonly used by this Court in FLSA collective actions.  (Mem. Op. & Order, DN 35); *see, e.g.*, *York v. Velox Express, Inc.*, 524 F. Supp. 3d 679, 685 (W.D. Ky. Mar. 10, 2021); *Hall v. Gannett Co.*, No. 3:19-CV-296, 2021 WL 231310, at *2 (W.D. Ky. Jan. 22, 2021).  This conditional certification allowed Plaintiff to notify prospective opt-in plaintiffs.  *See Hall v. Gannett Co.*, No. 3:19-CV-296-BJB-RSE, 2021 WL 231310, at *2 (W.D. Ky. Jan. 22, 2021) ("The point [of conditional certification] is to inform potential members of the collective action at the outset; that way they can decide whether to join when the parties may efficiently examine the facts surrounding their employment and determine whether the plaintiffs are indeed 'similarly situated.'").  Since then, fifteen individuals have opted

---

[2] In Count I, Plaintiff asserts that Defendants failed to provide employees with overtime compensation in violation of FLSA Section 207(a)(1) (i.e., 29 U.S.C. § 207(a)(1)) and 29 C.F.R. § 778.112.  (Compl. ¶ 84).

[3] In Count II, Plaintiff asserts that Defendants failed to provide employees with overtime compensation in violation of KRS 337.275 and 337.285.  (Compl. ¶¶ 91-92).

into the FLSA Collective.  (Defs.' Mot. Decert. 4; *see* Pl.'s Resp. Defs.' Mot. Decert. 4, DN 81).

Defendants now seek to decertify the FLSA Collective, arguing that Plaintiff is not similarly

situated with the opt-in members.  (Defs.' Mot. Decert. 4).

Additionally, Plaintiff seeks to certify the Rule 23 Class, which, by definition, would

include the FLSA Collective members, as well as any Ray Jones driver who was allegedly

wrongfully deprived of overtime compensation for work performed since January 8, 2017.[4]  (Pl.'s

Resp. Defs.' Mot. Decert. 5).

## II.    JURISDICTION

The Court has subject-matter jurisdiction because a federal question is presented.  *See* 28

U.S.C. § 1331.  In addition, the Court has supplemental jurisdiction over the state law claim

pursuant to 28 U.S.C. § 1367(a).

## III.    DISCUSSION

### A.    Plaintiff's Motion for Rule 23 Class Certification

"While the district court has broad discretion in certifying class actions, it must exercise

that discretion within the framework of Rule 23."  *Coleman v. Gen. Motors Acceptance Corp.*, 296

F.3d 443, 446 (6th Cir. 2002) (citing *Cross v. Nat'l Tr. Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir.

1977)).  As the moving party, Plaintiff bears the burden of proof to establish that certification is

proper.  *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing *Gen. Tel. Co. of

Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir.

1976)).  Granting Rule 23 class certification involves a two-step process:  First, the class must

meet the requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy, and a

---

[4] In Plaintiff's motion and his proposed order (DN 77-1), he did not seek certification of the FLSA
Collective.

court must conduct "a rigorous analysis[] that the prerequisites of Rule 23(a) have been satisfied." Fed. R. Civ. P. 23(a); *Falcon*, 457 U.S. at 161. All of these requirements must be satisfied, or certification must be denied. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc)).

If the class meets all four Rule 23(a) requirements, then Plaintiff must also demonstrate that "the proposed class [] [] meet[s] at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citations omitted). Plaintiff asserts that the requirements for Rule 23(b)(1) and (b)(3) are met. (Pl.'s Mot. R. 23 Class Cert. 22-23). Rule 23(b)(1)(A) "covers cases in which separate actions by or against individual class members would risk establishing 'incompatible standards of conduct for the party opposing the class.'" Fed. R. Civ. P. 23(b)(1)(A); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). "Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike ([e.g.,] a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity ([e.g.,] a riparian owner using water as against downriver owners)." *Id.* Rule 23(b)(3) "requires the district court to find 'that the questions of law or fact common to class members predominate over any questions affecting only individual members' and that the class action is 'superior to other available methods' to adjudicate the controversy fairly and efficiently." Fed. R. Civ. P. 23(b)(3); *In re Whirlpool*, 722 F.3d at 850-51.

Because the merits of the underlying claims are not considered in determining whether to certify a class, a court instead assumes that the complaint's substantive allegations are true and that the pleading states cognizable claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or

5

plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (citation omitted)); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997) ("A Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claims." (citation omitted)).  Notwithstanding this principle, the Court must "determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or are susceptible of common proof equally applicable to all class members." *Little Caesar Enters.*, 172 F.R.D. at 241 (citation omitted).  If the Court has doubt regarding whether to certify, it "should err in favor of allowing a class." *Id.* at 241-42 (citations omitted).

Unlike the opt-in nature of an FLSA collective action, which requires consent from each member of the action, a Rule 23 class certification would automatically include any qualifying individual within the class.  *See Clark*, 68 F.4th at 1009 ("[U]nder Rule 23, the district court certifies the action itself as a class action; whereas in an FLSA action, under § 216(b), the district court simply adds parties to the suit." (internal citations omitted)).   Nevertheless, the analyses between approving the FLSA Collective and the Rule 23 Class are related in the current case, because both concern the same type of plaintiff and alleged injury.

Defendants' main argument against Plaintiff's motion seeking Rule 23 class certification is that the MCA exemption applies to Plaintiff as well as several of the opt-in FLSA Collective members and thus, the Rule 23(a) requirements are not met.  (Defs.' Resp. Pl.'s Mot. R. 23 Class Cert. 2, 16).  This argument hinges on a finding that all Ray Jones drivers prior to 2021 delivered coal to ANCR, which then shipped the same coal out of state—indicating that the drivers did engage in interstate commerce.  (Defs.' Resp. Pl.'s Mot. R. 23 Class Cert. 5-8).  Because this

argument mainly addresses issues with commonality, this Rule 23(a)(2) requirement will be addressed first.

### 1. *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class" but there needs to be only one question common to the class that will lead to a resolution, advancing the litigation. Fed. R. Civ. P. 23(a)(2). "Although Rule 23(a)(2) speaks of 'questions' in the plural, . . . there need only be one question common to the class." *Sprague*, 133 F.3d at 397 (citing *In re Am. Med Sys.*, 75 F.3d at 1080). Moreover, "[i]t is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What [courts] are looking for is a common issue the resolution of which will advance the litigation." *Id.* As the Supreme Court has stated, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Falcon*, 457 U.S. at 157). "The claims of the class members must depend upon a common contention [that] . . . 'must be of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Powell v. Tosh*, 280 F.R.D. 296, 305 (W.D. Ky. 2012) (quoting *Dukes*, 564 U.S. at 350).

Plaintiff argues that "[t]he employees' proof on the overtime claims is similarly common," as "the members of the class each worked more than forty hours—according to Defendant's own documents—in one or more workweeks." (Pl.'s Mot. R. 23 Class Cert. 8). Additionally, Plaintiff contends that the Defendants' decision not to pay overtime "are similarly entry-wide questions" that affect all members of the proposed class. (Pl.'s Mot. R. 23 Class Cert. 8). According to Plaintiff, this means that class members not only suffered the same injury, but that damages will

also be calculated via mathematical process "which will apply in the same manner (although with different numbers) for each driver, unless the [MCA] exemption applies." (Pl.'s Mot. R. 23 Class Cert. 9).

Defendants respond that there is no commonality where the MCA exemption applies to Ray Jones drivers who delivered goods in interstate commerce, and thus the MCA exemption applies to those drivers. (Defs.' Resp. Pl.'s Mot. R. 23 Class Cert. 4, 5, 12). Defendants' argument rests on several theories, including: (1) Ray Jones "maintains all licenses and requirements for interstate commerce"; (2) it is the specific duties of the employees, and not the categorization of the employer, that determines whether employees engaged in interstate commerce; (3) between 2017-2020, "approximately 90-95% of its revenue was generated from [customer] ANCR, which often subsequently delivered the product out of state; and (4) eight out of the fifteen opt-in FLSA Collective members, including Plaintiff, worked for Ray Jones only during this period, thus categorizing their deliveries as interstate commerce. (Defs.' Resp. Pl.'s Mot. R. 23 Class Cert. 4, 11, 14). Whether the MCA exemption applies to members of the proposed Rule 23 Class turns on interpretation of law, determinations of disputed facts, and evidentiary findings. These issues of law and fact, however, are not appropriately decided at the class certification stage. (*See* Pl.'s Reply Mot. R. 23 Class Cert. 4-5, 7, 11, DN 86). As the Supreme Court has stated, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citation omitted). In fact, these arguments by Defendants highlight how central the evidence will be in determining the ultimate question common among the proposed Rule 23 Class members: whether the MCA exemption applies to them.

Much debate surrounds the usefulness and admissibility of two key pieces of evidence: (1) Department of Transportation ("DOT") form MCS-150 submissions and (2) the deposition testimony of ACNR employee Mickey Fitzhugh, including his redacted journal entries. (*See* Pl.'s Mot. R. 23 Class Cert. 12, 16-17; Defs.' Resp. Pl.'s Mot. R. 23 Class Cert. 11-14). As to the DOT documentation, Plaintiff argues that because Ray Jones submitted the MCS-150 form certifying that it only engaged in intrastate commerce from 2016-2022, there is a presumption that its employees do not fall within the interstate exemption of the MCA. (*See* Pl.'s Mot. R. 23 Class Cert. 12). Plaintiff relies on *McClurg v. Dallas Jones Enterprises Inc.*, No. 4:20-CV-00201-JHM, 2021 WL 5763563 (W.D. Ky. Dec. 3, 2021), in which this Court found that the plaintiff had met his burden of making a "modest factual showing" that the defendant trucking company employed its drivers in only intrastate activities, so that conditional certification was appropriate. (Defs.' Resp. Mot. R. 23 Class Cert. 13); *see also McClurg v. Dallas Jones Enters. Inc.*, No. 4:20-CV-00201-JHM, 2022 WL 627149, at *5-6 (W.D. Ky. Mar. 3, 2022.

Similarly, Plaintiffs point to Mickey Fitzhugh's testimony to argue that the determination of whether the coal delivered by Ray Jones drivers entered interstate commerce is inconclusive. (Pl.'s Mot. R. 23 Class Cert. 16-17). In contrast, Defendants rely on the Fitzhugh's testimony and corresponding journal entries to demonstrate that the coal was indeed delivered out of state. (Defs.' Resp. Pl.'s Mot. R. 23 Class Cert. 11). As the Plaintiff has stated, the disagreement regarding these pieces of evidence only highlights the commonality of issues within the Plaintiff's proposed class. (*See* Pl.'s Reply Mot. R. 23 Class Cert. 8 ("Whether the jury should accept Defendant's own statements in the MCS-150 as true is a common question susceptible to class resolution, which applies to all drivers without distinction.")). The Rule 23 certification stage is not the time for this Court to rule on these issues; however, it is clear that the eventual

"determination[s] of [these issues'] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Powell*, 280 F.R.D. at 305 (quoting *Dukes*, 564 U.S. at 350).

The common issue is whether the MCA exemption applies to the proposed Rule 23 Class members, and the resolution of these evidentiary issues is instrumental to class members' claims. As stated by Defendants, "Ray Jones Trucking has presented evidence that it and its drivers engaged in interstate commerce because they hauled coal for ACNR which had a destination out-of-state.  This evidence goes to the heart of the controlling question in this case:  did the Plaintiff[] engage in interstate commerce."  (Defs.' Resp. Pl.'s Mot. R. 23 Class Cert 12).  The broad applicability of these issues amongst the class members weighs in favor of finding commonality for the class.  The arguments presented by Defendants may weigh in favor of meeting their ultimate burden to prove that the MCA exemption applies, but it is clear from the parties' motions that these issues are far from settled.  Indeed, these are precisely the kind of "common issue[s] the resolution of which will advance the litigation," as they point to central question of the case:  whether the proposed class of plaintiffs were wrongfully denied overtime compensation under the FLSA and KWHA.  *Sprague*, 133 F.3d at 397.  Therefore, the Court finds that the Rule 23(a)(2) requirement of commonality is met.

### 2. *Numerosity*

The next requirement for class certification is that "the class is so numerous that joinder of all members is impracticable . . . ."  Fed. R. Civ. P. 23(a)(1).  As the Sixth Circuit has explained:

> There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1).

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (internal citation omitted) (citation omitted); *see also In re Am. Med. Sys.*, 75 F.3d at 1079 ("There is no strict numerical test for determining impracticability of joinder." (citation omitted)). "In ruling on a class action[,] a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings, and an appellate court will generally defer to the District Court's determination that a class is sufficiently numerous to make joinder impracticable." *Senter*, 532 F.2d at 523 (citation omitted). Plaintiff does not need to plead or prove "the exact number of class members;" however, the "impracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 965-66 (6th Cir. 2005) (quoting *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 389 (S.D. Ohio 2001)). The Court may also consider the following factors in determining numerosity:

> (1) judicial economy arising from the avoidance of a multiplicity of actions; (2) the geographic dispersion of class members; (3) the financial resources of class members; (4) the ability of claimants to institute individual lawsuits; (5) the amount of each member's individual claim; (6) knowledge of the names and existence of the potential class members; and (7) whether potential class members have already joined other actions.

*Powell*, 280 F.R.D. at 303 (internal quotation marks omitted) (quoting *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405, 410 (S.D.N.Y. 1998)).

Defendants' argument against numerosity mirrors their arguments against commonality—because eight of the fifteen opt-in FLSA Collective Action drove for Ray Jones only during the time that ANCR was its main customer, these drivers, including Plaintiff, are categorically exempt under the MCA. (Defs.' Resp. Pl.'s Mot. R. 23 Class Cert. 8, 11). Thus, Defendants argue that Plaintiff may only look to the number of drivers Ray Jones employed after 2020, which they contend cannot be ascertained to be considered sufficiently numerous. (Defs.' Resp. Pl.'s Mot. R. 23 Class Cert. 15). This conclusion is misguided because the question at this time is not the merits

of which Ray Jones employees may qualify for the MCA exemption, but the potential size of the class based upon the class's definition:

> All current and former truck driver employees of Ray Jones Trucking, Inc. who were not paid at an overtime rate of pay for such employee's work in excess of forty hours in one or more workweeks since January 8, 2017, despite the employee qualifying for overtime compensation.

(Compl. ¶ 57).

In his motion, Plaintiff states that "a starting point for the size of the class is 42 drivers.[5] (Pl.'s Mot. R. 23 Class Cert. 7).  Asking the Court to make a common-sense assumption regarding a normal amount of turnover within the company over time, Plaintiff argues this number is actually higher.  (Pl.'s Mot. R. 23 Class Cert. 7).  Specifically, Plaintiff contends that "based on a review of records produced by Defendant for the period from December 2016 through October 2022 alone, workweeks for a total of 52 Ray Jones employees are attached in Exhibits 1 through 117." (Pl.'s Mot. R. 23 Class Cert. 7).  Plaintiff assumes that most or all of these employees engaged in overtime work at some point during their employment with Ray Jones, citing Defendant's exhibits that indicate "Defendant scheduled truck drivers to drive coal Monday through Friday, and sometimes also on Saturday, and the daily sheets reflect that drivers generally were working more than eight hours per day."  (Pl.'s Mot. R. 23 Class Cert. 7 n.6).  Because the Court assumes that these substantive allegations are true for the purposes of Rule 23 Class certification, the number of 52 anticipated class members is "sufficiently numerous to make joinder impracticable."  *Senter*, 532 F.2d at 523 (citation omitted); *see also Est. of Pilgrim v. Gen. Motors LLC*, 344 F.R.D. 381, 399 (E.D. Mich. 2023) ("[T]he Sixth Circuit has previously held that a class of thirty-five was

---

[5] "[T]hat is, the 42 drivers Defendant asserted on its March 29, 2018[,] MCS-150 it employed at that time."  (Pl.'s Mot. R. 23 Class Cert. 7).

sufficient to meet the numerosity requirement." (citing *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974)). Thus, the Rule 23(a)(1) requirement of numerosity is met.

### 3. *Typicality*

Third, a court must consider whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague*, 133 F.3d at 399 (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). "[A] representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Senter*, 532 F.2d at 525 n.31 (citation omitted). "On the other hand, . . . the typicality requirement is not satisfied when a plaintiff can prove his own claim but not 'necessarily have proved anybody's else's claim.'" *Beattie*, 511 F.3d at 561 (quoting *Sprague*, 133 F.3d at 399).

Similar to Defendants' previous contentions, they argue that because Plaintiff only worked for Ray Jones during "a time period in which the undisputed evidence establishes that Ray Jones Trucking engaged in interstate commerce," that Plaintiff's claims are not typical of the proposed class. (Defs.' Resp. Pl.'s Mot. R. 23 Class Cert. 16). This argument, again, misses the point of the Rule 23 Class certification stage and instead focuses on the merits of Plaintiff's claims. Looking to the definition of the proposed class, it is apparent that Plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class

members," all proposed class members were employees of Ray Jones during the specified period and were allegedly injured in the same way by being denied overtime compensation in violation of the FLSA and KHWA. *Beattie*, 511 F.3d at 561 (internal quotation marks omitted) (citing *In re Am. Med. Sys.*, 75 F.3d at 1082). Thus, the Rule 23(a)(3) requirement of typicality has been met.

### 4.   *Adequacy of Representation*

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate:  (1) [t]he representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 524-25 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)).

### a.   **Class Representative**

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. '[A] class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'" *Amchem Prods.*, 521 U.S. at 625-26 (alteration in original) (internal citation omitted) (citation omitted). Defendants again argue that because Plaintiff's work for Ray Jones should categorically be considered as engaging in interstate commerce, that he "does not have a viable claim, and therefore, cannot serve as the class representative." (Defs.' Resp. Pl.'s Mot. R. 23 Class Cert. 16). Similar to the typicality analysis above, now is not the appropriate time to consider the viability of Plaintiff's claim. Applying *Amchem Products*, the focus of the class representative's adequacy is whether a plaintiff's interests and injuries mirror those of the class. *Amchem Prods.*, 521 U.S. at

14

625-26.  Here, there is clear alignment.  Plaintiff asserts the same alleged injury and legal theories as the proposed class members, as they all were employed by Ray Jones within the specified time period and were allegedly harmed in the same way.  Thus, Plaintiff's motion is granted, and Samuel Back is appointed class representative.

### b.      Class Counsel

Plaintiff  requests that his attorney, Mark Foster ("Foster"), be appointed counsel for the proposed class.  (Pl.'s Mot. R. 23 Class Cert. 1, 22).  Counsel should be "qualified, experienced and generally able to conduct the litigation."  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)).  Foster has outlined his credentials and experience in an attachment to Plaintiff's motion.  (*See* Foster Decl., DN 79-1).  In his declaration, Foster asserts that a "significant part of his practice involves class and collection action litigation in wage and hour matters, primarily claims under the Fair Labor Standards Act ("FLSA") and Kentucky Wages and Hours Act ("KWHA")."  (Foster Decl. ¶ 4). He has experience over the past six years representing "hundreds of employees in such wage and hour matters," including "in matters which have been resolved or are in the process of being approved." (Foster Decl. ¶¶ 5-6).  Foster agrees to "vigorously and fairly pursue the KWHA claims in this action" and states that he is "not aware of any interest [Plaintiff] has antagonistic to those of the members of the proposed class."  (Foster Decl. ¶ 8).  Furthermore, he states that Plaintiff "has made himself available to [Foster] to assist in pursuing the claims and has an experience and understanding of the issues in this case."

For the reasons stated above, the Rule 23(a)(4) requirement of adequacy of representation is met.

### 5.   *Rule 23(b) Requirement*

In addition to Fed. R. Civ. P. 23(a), "[the] parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods.*, 521 U.S. at 614.  In his motion, Plaintiff seeks approval pursuant to Fed. R. Civ. P. 23 (b)(1) and (b)(3).  Rule 23(b)(1)(A) provides that a court may permit a class action if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P. 23 (b)(1)(A).

Rule 23(b)(3) requires a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The predominance requirement of Rule 23(b)(3) is like Rule 23(a)(2)'s commonality requirement "in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (citation omitted).  The central question is whether the issues common to the class "[are] at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).  "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996)).  "Common questions need only predominate:  they need not be dispositive of the litigation." *Id.* (internal quotation marks omitted) (quoting *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)).

Regarding Rule 23(b)(1), Plaintiff submits that "not granting class certification, and conducting fifty-plus trials of the class members' claims individually would likely create inconsistent adjudications."  (Pl.'s Mot. R. 23 Class Cert. 22).  Specifically, Plaintiff points to several "fundamental questions" that apply to the class as a whole, including whether:

> (A) Defendant's MCS-150 representations that it was not an interstate carrier are binding and/or correct, (B) Fitzhugh's journals are admissible, (C) Defendant's violations were in good faith, (D) the individual defendants controlled Defendant Ray Jones Trucking, Inc. such that they were joint employers, and (E) any goods its drivers hauled in the stream of interstate commerce were *de minimis.*"

(Pl.'s Mot. R. 23 Class Cert. 22-23).  These common issues that predominate over individualized claims are better suited for Rule 23(b)(3) than Rule 23(b)(1).  As mentioned previously, "Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike ([e.g.,] a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity ([e.g.,] a riparian owner using water as against downriver owners)." *Amchem Prods., Inc.*, 521 U.S. at 614.

Plaintiff has not pointed to any obligation by law to treat the class members alike, nor does there seem to be a separate practical necessity apart from predomination of the issues.  Nevertheless, these questions sufficiently predominate over any questions affecting only individual members, such that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Resolving these questions will have a broad-reaching effect on every member of the proposed class, such that it will be more efficient to adjudicate the matter with all class members, rather than each member individually.  As such, Rule 23(b)(3) is satisfied and Plaintiff's motion is granted as to the certification of the Rule 23 Class.

6.    *Appointment of Class Counsel*

Fed. R. Civ. P. 23 also provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). In making that appointment, a court must consider:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
> (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)  counsel's knowledge of the applicable law; and
> (iv)   the resources that counsel will commit to representing the class . . . .

Fed. R. Civ. P. 23(g)(1)(A).

As noted above, the proposed class counsel is Foster, who has significant experience in "class and collection action litigation in wage and hour matters, primarily claims under the Fair Labor Standards Act ("FLSA") and Kentucky Wages and Hours Act ("KWHA")." (Foster Decl. ¶ 4). Foster has represented Plaintiff since the beginning of this litigation in 2022 and agrees to "vigorously and fairly pursue the KWHA claims in this action." (Foster Decl. ¶ 8). He has affirmed that he and his firm "are qualified to, and have adequate resources to, adequately represent the proposed class." (Foster Decl. ¶ 10). Therefore, Foster satisfies the requirements of Rule 23(g) and Plaintiff's request to appoint Foster as class counsel is granted**.**

B.    **Defendants' Motion to Decertify the FLSA Collective**

Defendants have moved to decertify Plaintiff's FLSA Collective Action, which was granted conditional certification in 2022. (Mem. Op. & Order, DN 35). Plaintiff was granted conditional certification because he successfully demonstrated that he and the other putative class members are "similarly situated," in that they "suffer from a single, FLSA-violating policy . . . ." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 576, 585 (6th Cir. 2009). To be granted conditional certification, Plaintiff needed only prove his situation was "similar, not identical, to the positions held by the putative class members." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir.

2006) (citation omitted).  The conditional certification is "by no means final," but merely the first step in a two-step process.  *Id.* at 546.  "At the second stage, following discovery, trial courts then more closely examine the question of whether particular members of the class are, in fact, similarly situated."  *Id.* at 547.

Despite this stricter analysis, the second stage remains less stringent than a Rule 23 Certification determination.  *Bassett v. Tenn. Valley Auth.*, No. 5:09-CV-00039, 2013 WL 665068, at *3 (W.D. Ky. Feb. 22, 2013) ("Again, the 'similarly situated' requirement for a FLSA collective action is less stringent than the 'predominance' requirement for a Rule 23 class action.").  "To succeed at step two and proceed to trial or judgment as a collective, named plaintiffs must show that they are similarly situated to the opt-ins by a preponderance of the evidence."  *McElwee v. Bryan Cowdery, Inc.*, No. 2:21-CV-1265, 2023 WL 4423880, at *11 (S.D. Ohio July 10, 2023) (citing *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010 (6th Cir. 2023)).

Plaintiff bears the burden to prove that the opt-in plaintiffs are similarly situated to himself.  *Hathaway v. Masonry*, No. 5:11-CV-121, 2013 WL 1878897, at *3 (W.D. Ky. May 3, 2013) (citing *O'Brien*, 575 F.3d at 584) (citation omitted).  He need not "show a 'unified policy' by the defendant;" rather, "[t]he question is simply whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected."  *Id.* (quoting *Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 994 (W.D. Tenn. 2011) (internal quotations omitted) (citation omitted).  Although the FLSA itself does not define "similarly situated," this Court looks to a "variety of factors, including [1] the 'factual and employment settings of the individual[] plaintiffs, [2] the different defenses to which the plaintiffs may be subject on an individual basis, [and] [3] the degree of fairness and procedural impact of certifying the action as a collective action.'"  *O'Brien*, 575 F.3d at 584 (second and fourth alterations in original) (citing 7B Charles Alan

19

Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1807, at 497 n.65 (3d ed. 2005)).

Defendants contend that the 15 opt-in plaintiffs in the FLSA Collective are not similarly situated to Plaintiff because "more than half of the opt-in plaintiffs, including the lead plaintiff, were not subjected to an allegedly unlawful policy.  As such, Ray Jones Trucking will have different defenses to each of the putative class members." (Defs.' Mot. Decert. 6).  Furthermore, Defendants assert the requirement of a detailed factual inquiry for the class, rendering it inappropriate to resolve this case.  (Defs.' Mot. Decert. 6).  Defendants' argument repeats their opposition to Rule 23 Class certification—that because eight of the fifteen opt-in FLSA Collective members, as well as Plaintiff, drove for Ray Jones only when ANCR was its primary customer, these plaintiffs categorically engaged in interstate commerce and thus qualified for the MCA exemption.  (Defs.' Mot. Decert. 4).  Defendants argue they "may have different defenses to each of these remaining opt-in Plaintiffs" and because they "will have to present an individualized assessment of each driver's work to determine whether the MCA exemption applies[,] [t]his type of assessment is not suitable for a class action."  (Defs.' Mot. Decert. 11-12).

Plaintiff counters that Defendants' factual assertions are not supported by the record and Defendants' main MCA defense only bolsters the appropriateness of collective action over fifteen individual adjudications.  (Pl.'s Resp. Defs.' Mot. Decert. 3, 5).  First, Plaintiff asserts that the 15 opt-in members share the same factual and employment setting as him.  (Pl.'s Resp. Defs.' Mot. Decert. 6).  Plaintiff relies on *Clark*, in which the Sixth Circuit held "[w]hether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68 F.4th at 1010.  Here, Plaintiff posits that

he and the opt-in members shared identical positions, leadership structure, location, and policies. (Pl.'s Resp. Defs.' Mot. Decert. 6).

Next, Plaintiff argues that Defendants raise the MCA defense against all plaintiffs, and the class members would subsequently not be subject to different defenses on an individual basis. (Pl.'s Resp. Defs.' Mot. Decert. 7).  Specifically, Plaintiff contends that although Defendants may be able to establish that eight of the fifteen opt-in members drove for Ray Jones only prior to 2021 (i.e., when ANCR was its primary customer), it has not presented any evidence to demonstrate that the other seven drivers did not drive for Ray Jones during this time as well.  (Pl.'s Resp. Defs.' Mot. Decert. 7).  In essence, Plaintiff argues that "the actual question for purposes of similarity amongst the FLSA plaintiffs is . . . whether the similarly-situated drivers, like [Plaintiff], drove during the earlier period Defendants contend coal went out of state, and whether Defendants otherwise contend that all drivers are subject to the MCA exemption."  (Pl.'s Resp. Defs.' Mot. Decert. 7 n.6).

Plaintiff notes correctly that Defendants have failed to establish the MCA will be asserted against all member of the FLSA Collective.  As Defendants have stated, "given that at any time [prior to 2021], any Plaintiff could reasonably be expected to transport coal to a rail or barge facility with an out-of-state destination, they are exempt from overtime." (Defs.' Mot. Decert. 10).  Defendants did not establish that the remaining seven opt-in members do not fall within this category.  Notwithstanding this fact, the possibility that Defendants will need to assert different defenses does not automatically compel decertification. *See Monroe*, 860 F.3d at 404 ("Several circuits, including our own, hold that individualized defenses alone do not warrant decertification where sufficient common issues or job traits otherwise permit collective litigation."  (citing *O'Brien*, 575 F.3d at 584-85)).  The Sixth Circuit has explained that "plaintiffs were similarly

situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. The Sixth Circuit also held that decertification is not mandatory where "representative evidence allowe[s] [for] appropriate consideration of the individual defenses raised . . . ." *Monroe*, 860 F.3d at 404, 405 (quoting *O'Brien*, 575 F.3d at 584-85). Here, Defendants will have the opportunity to present evidence demonstrating at what point each of the 15 drivers were employed by Ray Jones and thus any potential different defenses will be given appropriate consideration.

Lastly, Plaintiff asserts that "[c]ontinuing as a Collective Action is [f]air and [f]ar [m]ore [e]fficient." (Pl.'s Resp. Defs.' Mot. Decert. 8). Plaintiff points to the policy behind FLSA collective actions, and "Congress's remedial intent by consolidating many small, related claims of employees for which proceeding individually would be too costly to be practical." *Monroe v. FTS USA LLC*, 860 F.3d 389, 405 (6th Cir. 2017) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Given the high degree of commonality in alleged injury and damages between Plaintiff and the opt-in members, judicial efficiency weighs in favor of consolidating the fifteen claims. Whether any of the sixteen members, including Plaintiff, are exempt from overtime pay under the MCA will be most fairly and efficiently determined by adjudicating the evidence in one proceeding, rather than sixteen individual actions.

For the reasons stated above, Defendants' motion is denied.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Plaintiff's Motion for Rule 23 Class Certification (DN 77) is **GRANTED**, and Count II of this action shall be maintained as a plaintiff class under Fed. R. Civ. P. 23(b)(3) by Plaintiff as class representative on behalf of the class, defined as:

> All current and former truck driver employees of Ray Jones Trucking, Inc. who were not paid at an overtime rate of pay for such employee's work in excess of forty hours in one or more workweeks since January 8, 2017, despite the employee qualifying for overtime compensation.

Attorney Mark Foster is appointed as class counsel as he meets all of the requirements of Fed. R. Civ. P. Rule 23(g). Plaintiff Samuel Back is appointed as class representative. By **November 18, 2024**, Plaintiff and Defendants shall meet and confer, through counsel, regarding: (i) the content and form of notice to be given to the Rule 23 class members; (ii) a joint proposed judicial notice pursuant to Rule 23(c)(2); and (iii) a proposed notice process by both regular mail and email. By **December 2, 2024**, Defendants shall provide Plaintiff, by email and in hard copy, a list of the full name and last known mailing address of each current and former employee fitting the class description, their dates of employment, and their last known personal email address.

2.   Defendants' Motion to Decertify Plaintiff's Conditionally Certified Class under Section 216(b) of the Fair Labor Standards Act ("FLSA") (DN 78) is **DENIED**.[6]

3.   The stay previously imposed by the Court (DN 89) is lifted, and Plaintiff shall file a response to Defendants' Motion for Partial Summary Judgment (DN 88) with 51 days from entry of the Memorandum Opinion and Order or, if earlier, 21 days after Plaintiff files a dispositive motion, to file a response. Any reply shall be filed in accordance with LR 7.1(c).

Greg N. Stivers, Chief Judge
United States District Court

October 23, 2024

cc:   counsel of record

---

[6] Because Plaintiff has not moved for final certification of the FLSA Collective Action, the Court does not grant certification in this Order. To receive a ruling on this determination, Plaintiff must first move for final certification of the Collective Action. *See Hathaway*, 2013 WL 1878897, at *3 (in which this Court examined each of the opt-in plaintiffs to determine if he was similarly situated to the plaintiff before granting final certification).

23