**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

| | | |
|---|---|---|
| SAMUEL BACK, | ) | |
| on Behalf of Himself and All | ) | |
| Others Similarly-Situated, | ) | **PROPOSED COLLECTIVE ACTION** |
| | ) | **UNDER FLSA AND CLASS ACTION** |
| *Plaintiff,* | ) | **UNDER KWHA** |
| | ) | |
| | ) | CASE NO.    4:22-cv-5-GNS |
| v. | ) | |
| | ) | |
| RAY JONES TRUCKING, INC., | ) | |
| TERESA JONES, GRANT JONES and | ) | |
| STEVEN JONES, | ) | **JURY DEMANDED** |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**JOINT MEMORANDUM IN SUPPORT OF JOINT MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Come Plaintiff and Defendants (collectively, the "Parties"), by and through counsel, and respectfully provide this Joint Memorandum in support of their Joint Motion for Preliminary Approval of Class Action.[1]

**INTRODUCTION**

After three years of contested litigation, the Parties reached an agreement to settle this Action on a collective and class action basis for $450,000.00 as set forth in the Settlement Agreement. If approved, the proposed Settlement will resolve and release all claims asserted in this Action. The Parties reached the Settlement after extensive litigation, well-informed and

---

[1] Unless otherwise stated, all capitalized terms herein are as defined in the Parties' Settlement Agreement (the "Settlement" or "Settlement Agreement"), a copy of which is attached to the Motion as <u>Exhibit 1</u>. All "S.A." references are to paragraphs in the Settlement Agreement. In further support of the Motion, attached to the Motion is the Declaration of Mark N. Foster ("Foster Dec.")   (<u>Exhibit 2</u>).

arm's-length settlement negotiations by experienced counsel on both sides, extensive discovery concerning the claims and defenses at issue in both this case and a case involving similar issues and some of the same factual defenses,[2] a full day judicial settlement conference before the Magistrate Judge in June, 2023, another year of litigation (including contested Rule 23 class certification motion practice, resulting in the certification of a Rule 23 class over Defendants' objection), and a second full-day mediation in the summer of 2024, and extensive negotiations thereafter. Ultimately, the parties reached a settlement to resolve the claims on a class-wide basis.

By the time the Settlement was reached, Plaintiff and Plaintiff's Counsel were aware of the strengths and weaknesses of the claims and defenses and made a fully informed evaluation of the contingent risks of continued litigation balanced against the significant and certain monetary recovery provided by the proposed Settlement. Plaintiff believes the proposed Settlement is not only in the best interests of the Settlement Collective and Class and should be approved by the Court, but is also a good result, especially considering the uncertainties, risks, and delay that continued litigation would bring, which might then result in a smaller recovery or no recovery.

At this time, the Parties seek entry of the agreed-upon Preliminary Approval Order so that the Settlement Collective and Class may receive Notice of the terms of the proposed Settlement, and their rights concerning it. Specifically, the Preliminary Approval Order will:

    1)    grant approval of the FLSA Collective Settlement;

---

[2]    *McClurg v. Dallas Jones Enterprises, Inc., d/b/a Clay's Trucking*, Case No. 4:20-cv-201-RGJ-HBB in this Court, involved a trucking company with whom Defendant Ray Jones Trucking, Inc. regularly divides work. See Exhibit 3 to the Motion (DN 222 in *McClurg*) at 5-6. Like Defendants here, the *Clay's Trucking* defendant asserted that coal transported by its drivers was later moved by rail and barge providers out of state, and that the Motor Carrier's Act thus applied to the drivers. A deposition of Mickey Fitzhugh, a key logistics manager at the coal mine from which drivers in the *McClurg* action and this action transported coal, was taken in the present case. This deposition related to the Motor Carrier's Act defense, and both plaintiffs and defendants cited the deposition in both this case (DN 77 at 16-20, DN 78) and the *McClurg* matter (Exhibits 3 at 7-8 (internal page numbers 6-7). A motion for preliminary approval of a class action settlement was filed in the *McClurg* matter on August 1, 2024 (DN 235 in *McClurg*), and remains pending.

2)    grant preliminary certification of the Settlement Collective and Class pursuant to Fed.

R. Civ. P. 23 and find, for settlement purposes only, that the Settlement Collective and Class are substantially similarly situated pursuant to the FLSA, 29 U.S.C. § 216(b);

3)    preliminarily appoint Plaintiff as Settlement Collective and Class Representative;

4)    preliminarily appoint Class Counsel;

5)    approve the form and procedures for dissemination of the Settlement Notice; and

6)    approve the proposed schedule for notice and final approval of the Settlement.

## **FACTUAL AND PROCEDURAL HISTORY**

Defendant Ray Jones Trucking, Inc. ("Ray Jones Trucking") provided trucking services, including the transportation of coal from mines to power plants and rail and barge loadouts. The other Defendants, Robert Grant Jones, Teresa Jones, and Steven Jones, are owners of Ray Jones Trucking and/or involved in its management (the "Individual Defendants"). Plaintiff and the Settlement Collective and Class Members are truck drivers who worked for Ray Jones Trucking.

Plaintiff alleges that Ray Jones Trucking violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and Kentucky Wages and Hours Act, K.R.S. § 337.275 et seq. ("KWHA") when truck drivers worked overtime hours (hours in excess of forty in a week) and were not paid overtime compensation. Plaintiff further alleges that the Individual Defendants controlled Ray Jones Trucking and caused it to engage in those alleged violations. Defendants dispute those allegations.

Plaintiff filed a Class and Collective Action Complaint on January 10, 2022. DN 1. Thereafter, on June 22, 2022, the Court approved a notice to be issued under the FLSA to persons

Plaintiff contended were similarly-situated.  DN 35.  Fourteen other drivers (in addition to Plaintiff Back) ultimately joined the action.  DN 8, 12, 15, 28, 31-33, 36-40, 51; see also S.A. at § 14(P).

In 2023, following lengthy litigation and discovery, the Parties met and conferred and agreed to participate in a judicial settlement conference before the Magistrate Judge to attempt to resolve the claims in both this action and the *McClurg* action.  That settlement conference was ultimately scheduled for May 31, 2023.  Prior to the May, 2023 settlement conference, the Parties had conducted extensive discovery, including written discovery and motion practice.  In discovery, Ray Jones Trucking produced certain payroll and timekeeping data, including thousands of daily log sheets which showed on a day-to-day, driver-by-driver basis a number of hours worked, the amount paid the driver for that day's work, and locations to which the driver drove on the day in question.  See DN 70-19 for a limited sample example of daily log sheets for Plaintiff Back..

As part of the ADR preparation, Plaintiff's counsel analyzed the data and information produced by Defendants, prepared damages analyses, and conducted interviews of numerous Settlement Collective and Class Members.  On May 31, 2023, the Parties participated in a full-day judicial settlement conference conducted in person in Bowling Green, Kentucky, that was overseen by the United States Magistrate Judge H. Brent Brennenstuhl. During that settlement conference, the Parties engaged in negotiations but were unable to reach an agreement and, therefore, returned to litigation with vigorous discovery and motion practice, including the production of additional documents and the taking of depositions.

Specifically, the parties took the deposition of Mickey Fitzhugh.  Mr. Fitzhugh was a key logistics employee at the coal mine customer of Ray Jones Trucking, and provided information

both parties considered crucial to Defendant's theory that coal driven within Kentucky by the drivers ultimately travelled out of state during periods prior to January 30, 2020.

After additional litigation and discovery, beginning in early 2024, the Parties re-engaged in their settlement negotiations, ultimately participating in a full day mediation with mediator Thomas Williams in Louisville, Kentucky on July 25, 2024.  Like the May 31, 2023 judicial settlement conference, this mediation also failed.  However, ultimately, after the Court granted Plaintiff's Motion for Rule 23 Class Certification (DN 77) over Defendants' objections (see DN 101), the Parties again returned to the negotiating table and ultimately reached a settlement, which was later fully-documented in the Settlement Agreement.

## SETTLEMENT AGREEMENT

### I.    THE SETTLEMENT COLLECTIVE AND CLASS

The Settlement includes the Gross Settlement Amount of $450,000.00 for the Settlement Collective and Class. S.A. § 14(J). The Parties reached this settlement to resolve Plaintiff's claims asserted on behalf of the Settlement Collective and Class, which includes the Named Plaintiff, Opt-In Plaintiffs, and all individuals who worked for Ray Jones Trucking as a truck driver for any period of time from January 10, 2017 to July 25, 2024 (the "Applicable Class Period").

Defendants have identified approximately sixty Settlement Collective and Class Members. Should the Settlement receive preliminary approval, each of those persons will be advised of the Settlement through the Notice to be distributed via U.S. mail and email (to the extent email addresses are available). S.A. § 14(N); S.A. at §§ 20-23; Exhibit A to S.A.

### II.    GROSS SETTLEMENT AMOUNT AND RELEASE OF CLAIMS

The Gross Settlement Amount of $450,000.00 will resolve the claims asserted in the Lawsuit. The Gross Settlement Amount will cover, subject to the Court's approval: (a) Settlement

Payments to Settlement Collective and Class Members who do not opt out; (b) Plaintiff's Counsel's attorneys' fees of up to one-third of the Gross Settlement Amount to compensate Plaintiff's Counsel for all work performed in this action to date, plus all work remaining to be performed, including securing Court approval, ensuring the Settlement is fairly administered and implemented, and obtaining final approval and dismissal[3]; (c) reimbursement of Plaintiff's Counsel's reasonable out-of-pocket costs not to exceed $5,000.00; and (d) a service award of up to $20,000[4] to Plaintiff for his service to the Settlement Collective and Class in bringing and prosecuting this action. S.A. §§ 37-38. The Gross Settlement Amount excludes Employer Payroll Taxes, to be paid by Defendants *in addition to the Gross Settlement Amount,* thus increasing the Settlement's total value. S.A. § 32.

After attorney's fees and costs and Plaintiff's service award, as approved by the Court, are subtracted from the Gross Settlement Amount, the remainder ("Net Settlement Amount") will be distributed to Settlement Collective and Class Members who do not opt out. S.A. § 30, 34. The amounts distributed shall be calculated pursuant to an objective formula based on tenure *(i.e.,* workweeks) during the Applicable Class Period. S.A. § 30. The FLSA Opt-In Plaintiffs are to receive 5 points per workweek for the workweeks prior to January 30, 2020 and 10 points per workweek for workweeks after January 30, 2020. *Id.* The remaining Settlement Collective and Class receive 4 points per workweek for the workweeks prior to January 30, 2020 and 8 points per workweek for workweeks from January 30, 2020. *Id.*

The total number of settlement points for all Settlement Collective and Class Members

---

[3] Plaintiff's counsel's award is subject to being adjusted downward if one or more Settlement Collective and Class Members request exclusion; this prevents the fee award from exceeding one-third (1/3) of the total recovery. S.A. §§ 30 (last paragraph) and 37. Plaintiff's service award will similarly be adjusted. S.A. §§ 30 (last paragraph) and 38.

[4] See preceding footnote.

will be added together, and the resulting sum will be divided into the Net Settlement Amount to reach a per-point dollar figure. *Id.* That figure will then be separately multiplied by each Settlement Collective Member's number of settlement points to determine each Settlement Collective and Class Member's specific Settlement Award. *Id.* The proposed formula takes into account: (a) the risk of Rule 23 class certification ultimately failing (including based Defendants' assertion that Plaintiff Back's claims are not typical of drivers who drove after January 30, 2020 (Mr. Back drove only before that date) and are barred by the MCA exemption because of alleged out-of-state ultimate destinations of the coal driven during the pre-January 30, 2020 period)[5], which could potentially exclude drivers who are not FLSA Opt-Ins from this action; and (b) factual differences relating to the claims and defenses in various time periods, including (i) Defendants' assertion that coal driven by the Settlement Collective and Class Members was transported by others out of state prior to January 30, 2020, and (ii) Plaintiff's assertion that coal driven by the Settlement Collective and Class Members was not transported by others out of state after January 30, 2020.

In exchange for their Settlement Payments, the Named Plaintiff, Opt-In Plaintiffs, and Settlement Collective and Class Members will release the following claims:

> Effective upon the Effective Date, the Settlement Collective and Class Members (except those who effectively exclude themselves from the Settlement pursuant to this Agreement) will release and discharge Releasees (A) with respect to their FLSA claims, from any and all known and unknown, asserted and non-asserted, wage and hour claims, including, but not limited to, all unpaid overtime claims based upon the allegations made in the Lawsuit of not being paid overtime premium compensation for overtime work performed hours worked, including overtime compensation, claims of off the clock work, including liquidated damages under the FLSA, for the Applicable Class Period, and (B) with respect to all known and unknown,

---

[5] This risk itself is mitigated to an extent by Plaintiff's assertion that MCS-150 filings by Ray Jones Trucking in effect at all relevant times were binding against Defendants and/or evidence in favor of Plaintiff. Plaintiff contends those MCS-150 filings asserted the Ray Jones Trucking was not an interstate trucking company and that its drivers were not interstate drivers, which is contrary to Defendants' position in this action.

asserted and non-asserted, wage and hour claims under state law, including but not limited to claims for unpaid wages or overtime under the KWHA or otherwise (including through KRS 446.070 and common law), claims of off the clock work, claims under any theories for breach of any employment agreement/contract for failure to pay owed wages (including wage payment and collection law or similar claims), and including, without limitation, liquidated damages and all other penalties available; this release is for all such claims accruing from the beginning of time until November 20,[6] 2024. This release includes a release of any and all state law wage and hour claims described above, timing of wage payment, gap time, and unjust enrichment or similar claims that could have been brought by any Settlement Collective and Class Member based upon the facts and circumstances alleged in the Lawsuit. The Parties acknowledge and agree that only Settlement Collective and Class Members who choose to cash or deposit their settlement check, thus affirmatively opting into the Action, shall release any FLSA claims.

S.A. at § 40.

### III.    NOTICE OF SETTLEMENT

The parties propose, and the Settlement Agreement contemplates, that if this Court grants preliminary approval, a notice will be sent to all proposed class members advising them of the Settlement Agreement and the parties' request for the Court to approve the settlement. S.A. §§ 20-23. The Notice will be both mailed (by U.S. First Class Mail) and emailed, to the extent such email addresses are known to Defendants. If any mail is returned as undeliverable, Plaintiff's Counsel will perform a skip trace to search for any updated address, and within seven business days of any mail being returned as undeliverable, remail the Notice to the updated address. S.A. § 22. Settlement Collective and Class Members will have forty-five calendar days from the date the Notices are initially mailed by Plaintiff's Counsel to object or opt-out of the Settlement. S.A. §§ 14(O), 24.

---

[6]    The settlement was reached in principle on November 20, 2024. While there are different dates for the class period (through July 25, 2024, the date of the mediation) and the date through which the release is effective (November 20, 2024), the parties have conferred and believe that this is largely a distinction without a difference because, importantly, Ray Jones Trucking ceased active operations and did not employ any truck drivers after the Spring of 2024 following the closing of the coal mine that was effectively Ray Jones Trucking's only customer. Since no drivers drove between July 25, 2024, it is expected that no unpaid wages claims accrued between July 25, 2024 and November 20, 2024.

## IV.    DISTRIBUTION OF SETTLEMENT PAYMENTS

Settlement Payments will be negotiable for 90 days from the date of issuance ("Acceptance Period"). S.A §§ 14(A), 34. Within two weeks after the Effective Date, Plaintiff's Counsel will distribute all Settlement Checks with an accompanying letter in the form attached as Exhibit C to the Agreement explaining that checks must be cashed during the Acceptance Period. S.A. § 34. During the last portion of the Acceptance Period, Plaintiff's Counsel may mail and email reminders, in the form attached as Exhibit D to the Agreement, to those who have not yet cashed or deposited their Settlement Check. *Id.* During the Acceptance Period, Defendants will issue a new check for any lost checks. *Id.*

If at the conclusion of the Acceptance Period (plus sixty days), there are any uncashed Settlement Checks, those funds will be conveyed to the Kentucky State Treasurer, Unclaimed Property Division.[7] S.A. § 36; also following the Acceptance Period, a list of all Settlement Collective and Class Members who negotiated Settlement Checks will be filed with the Court to serve as consents under 29 U.S.C. § 216(b). *Id.* § 35. Once a list of all consents has been filed, the Court will dismiss the case with prejudice. *Id.*[8]

---

[7]    The Parties' Settlement Agreement sets out that any remaining monies would be submitted to the "Kentucky State Treasurer, Abandoned Property Division." S.A. § 36. Since the execution of that Agreement, it has become known to the Parties that the correct name of that division is the *Unclaimed* Property Division. (https://treasury.ky.gov/unclaimedproperty/Pages/overview.aspx). Should any of the settlement funds remain sixty days after the Acceptance Period, the Parties agree that Kentucky's Unclaimed Property Division is the appropriate state division to which those funds should be forwarded.

[8]    On March 19, 2025, as this memorandum was being finalized, counsel for Plaintiff received a ruling from this Court in *Wedding v. Brighton Cornerstone* in which Judge Hale denied preliminary approval of a proposed FLSA and KWHA settlement on the basis that "the act of cashing a check does not satisfy the statutory requirement of written consent filed in the record." DN 34 in Case 4:23-cv-28. The parties believe that the present case is distinguishable in this regard from *Wedding* because (a) FLSA notice has already issued in the present case, and persons other than the named Plaintiff have already joined, (b) the agreement in the present case expressly provides for each settlement check to have, on its reverse, language relating to the class member consenting to join this action by cashing the check, see S.A. at ¶ 41, a provision which was not present in the agreement in *Wedding*, (c) the agreement in the present case requires the filing with the Court of a list of all opt-in plaintiffs, S.A. ¶ 35, a provision which was not present in the agreement in *Wedding*, and (d) the agreement in the present case provides that the dismissal shall not occur until *after* such filing, *id.*, a provision which was not present in the agreement in *Wedding*. Based on these differences, the parties believe that the agreement, as written, meets the statutory process of requiring a written consent to be filed with the Court under 29 U.S.C. § 216(b). However, counsel have conferred and agreed that, out of an abundance of compliance and to attempt to avoid this issue in any way slowing the process of approval of this settlement, they will ensure that not only a list of persons who cashed, deposited or otherwise negotiated a settlement check, but also a copy of the

## V.    NO OTHER AGREEMENTS

Federal Rule 23(e)(3) requires parties to identify any other agreements.  Other than the

Settlement Agreement and as set out in this Memorandum, the parties have no other agreements

regarding the Settlement or resolution of claims of the Settlement Collective and Class Members.

## ARGUMENT

## I.    THE FLSA SETTLEMENT SHOULD BE APPROVED.

The Court presiding over an FLSA action may approve a proposed settlement of a

*bona fide* dispute "'after scrutinizing the settlement for fairness.'" *Landsberg v. Acton Enters.,*

*Inc.,* No. C2-05-500, 2008 WL 2468868, at* 1 n. l (S.D. Ohio June 16, 2008) (quoting *Lynn's*

*Food Stores, Inc. v. US., Acting By & Through U.S. Dep't of Labor, Emp. Standards Admin.,*

*Wage & Hour Div.,* 679 F.2d 1350, 1353-55 (11th Cir. 1982)).  Here, the Settlement presented

will resolve a *bona fide* dispute as to disputed wages and overtime, under terms that are fair

and reasonable.

### A.    The Settlement Resolves a *Bona Fide* Dispute.

First, the Court determines whether there is a bona fide dispute between the parties.

"The FLSA creates a statutory entitlement that employers and employees generally may not

agree to pay or receive less than what the statute provides for." *Ross v. Jack Rabbit Servs.,*

*LLC,* No. 3:14- cv-44-DJH, 2016 WL 7320890, at *2 (W.D. Ky. Dec. 15, 2016) (citing

*Crawford v. Lexington- Fayette Urban Cnty. Gov't,* No. 06-cv-299-JBC, 2008 WL 4724499

(E.D. Ky. Oct. 23, 2008) (citing *Martin v. Ind. Michigan Power Co.,* 292 F. Supp. 2d 947

(W.D. Mich. 2002)). However, "a federal district court may approve a settlement of a suit

---

front and reverse of each settlement check containing the consent language for each plaintiff, be filed with the Court.

brought in a federal district court pursuant to Section 16(b) of the FLSA." *Id.* (citing *Lynn's Food,* 679 F.2d 1350). "A federal district court approving any settlement of claims must determine whether a bona fide dispute exists to ensure that plaintiff employees have not relinquished their rights to compensation guaranteed by the statute." *Ross,* 2016 WL 7320890, at *2. A *bona fide* dispute exists when there are questions about the existence and extent of Defendants' FLSA liability. *Lopez v. Silfex, Inc.,* No. 3:21-cv- 61, 2021 WL 5795280, at *4 (S.D. Ohio Dec. 3, 2021) (quoting *Selkv. Pioneers Mem'l. Healthcare Dist.,* 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016)). Without a *bona fide* dispute, no settlement could be fair and reasonable. Thus, "some doubt" must exist that Plaintiff would succeed on the merits through litigation of their claims. *Cook v. Papa John's Paducah, LLC,* No. 5:20-cv-00129 (TBR), 2022 WL 301796, at *1 (W.D. Ky. Feb. 1, 2022).

Here, the Parties disagreed on numerous legal and factual issues, including, for example:

- whether material hauled by Ray Jones Trucking's drivers in Kentucky was later transported out-of-state by other drivers;

- whether the Motor Carrier's Act exemption to FLSA overtime requirements applied to some or all of Ray Jones Trucking's drivers;

- whether Ray Jones Trucking's statements on its MCS-150 filings with FMCSA were binding and/or relevant;

- whether Defendants acted in good faith to comply with the FLSA; and

- whether members of the Settlement Collective and Class were "similarly situated."

The Settlement presented represents a compromised resolution on all these issues, and the continued litigation of the claims asserted would pose many serious risks and uncertainties. Accordingly, the Settlement resolves a *bona fide* dispute.

**B.** <u>**The Settlement of the FLSA Claims Is Fair and Reasonable.**</u>

To approve the Parties' Agreement, the Court must conclude that it is a "fair, reasonable, and adequate" resolution of a *bona fide* legal dispute. *Mitcham v. Intrepid US.A., Inc.,* No. 3:17-cv-703-CHB, 2019 WL 5496023, at *2 (W.D. Ky. May 28, 2019) (quoting *Int'l Union, United Auto, Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615,631 (6th Cir. 2007) (analyzing class action settlement under federal Rule 23)). The Sixth Circuit established a seven-factor test to assess whether a class action settlement is "fair, reasonable, and adequate" under Rule 23(e). *Id.* Those factors include: (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest." *Does 1-2 v. Deja Vu Servs., Inc.,* 925 F.3d 886, 894-95 (6th Cir. 2019). *See Lott v. Louisville Metro Gov't,* No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *4 (W.D. Ky. Mar. 17, 2023) (these factors are "used to determine the reasonableness of settlement agreements under the FLSA"). Here, the above factors firmly support approval of the FLSA Collective Settlement.

**1.** *Risk of Fraud or Collusion*

The settlement approval analysis often focuses on whether the settlement is the product of arm's-length negotiations. The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO,* 803 F.2d 878, 880 (6th

Cir. 1986). Courts have also held that "absent evidence of fraud or collusion, the Court may presume none exists." *Love v. Gannett Co. Inc.,* No. 3:19-cv-296-BJB-RSE, 2021 WL 4352800, at *2 (W.D. Ky. Sept. 24, 2021).

Here, the Settlement resolves a highly-contested litigation that has spanned over three-and-a-half years, during which the Parties engaged in extensive fact discovery and motion practice. The Settlement was only reached through the efforts of the Magistrate Judge conducting, a full day settlement conference, the parties briefing contested Rule 23 class certification filings, the parties conducting a second mediation, and the parties receiving and digesting the Court's ruling on the contested Rule 23 class certification issues. Foster Dec. at ¶ 20. Moreover, there is no evidence of any fraud or collusion; thus, the Court may appropriately presume none exists. Accordingly, this factor weighs in favor of approval.

### 2. *Complexity, Expense, and Likely Duration of the Litigation*

Like *Lott,* "[t]his matter has been pending [several years[9]], and it may be years before the case goes to trial. The Parties have already spent considerable time and expense on this case. If forced to litigate this case further, the Parties would continue to engage in costly litigation and motion practice." 2023 WL 2562407, at *5. Specifically, if the Settlement is not approved, both parties intend to file motions for summary judgment asserting that the uncontested facts entitle them to judgment as a matter of law on the applicability of the MCA exemption. Depending on the result of those motions, Defendants may file a motion to de-certify the Rule 23 class and FLSA collective action. Finally, if summary judgment is not granted in whole, a trial will be needed to resolve contested issues of fact. Thus, the

---

[9]    This matter was filed in January, 2022 – over 3 years ago; *Lott* similarly was a case that had been filed in 2019, four years prior to the *Lott* decision.

Agreement here conserves judicial resources by resolving the claims of many, if not all, drivers. Foster Dec. at ¶ 21. *Accord Does 1-2,* 925 F.3d at 898 (approving settlement of consolidated lawsuits). This factor is satisfied.

### 3.      *Amount of Discovery Engaged in by the Parties*

The Parties have engaged in extensive discovery in these cases. In approving settlements, courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure "counsel had an adequate appreciation of the merits of the case before negotiating." *George v. Acad. Mortg. Corp. (UT),* 369 F. Supp. 3d 1356, 1370 (N.D. Ga. 2019).  Here, the proposed Settlement was reached only after: (1) very substantial discovery and motion practice, including four depositions, interrogatories, Ray Jones Trucking's production of tens of thousands pages of documents (not including third-party discovery), document review, and extensive data analysis; (2) informal interviews of Plaintiff and Opt-Ins; (3) depositions of all of the Individual Defendants and (4) the deposition of a key third-party witness (the logistics manager of Ray Jones Trucking's primary customer, a coal mine.  The Parties have produced numerous documents, filed over 100 documents in CM/ECF, and appeared before the Magistrate Judge. *Id.*  This factor is satisfied.

### 4.      *Likelihood of Success on the Merits*

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.,* 636 F.3d 235, 245 (6th Cir. 2011) *(quoting In re Gen. Tire & Rubber Co. Sec. Litig.,* 726 F.2d 1075, 1086 (6th Cir. 1984)). Courts have held that they "cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *Vassalle v. Midland Funding LLC,* 708 F.3d 747, 754-55 (6th Cir. 2013) (quoting *Int 'l Union,* 497 F.3d

at 631).

While Plaintiff here continues to believe in the strength of his claims, Defendants have and would continue to assert numerous defenses that present risk as they could possibly defeat Plaintiff's ability to obtain or sustain any judgment, let alone a judgment on a collective or class basis. For example, Defendants dispute that drivers are entitled to overtime pay at all (Defendants asserts the Motor Carrier's Act applies to the Settlement Collective and Class, which would exempt them from any entitlement to overtime payments), and assert the drivers are not similarly-situated in any event (except for purposes of this Settlement). Foster Dec. at ¶ 21. The Settlement avoids the multitude of risks to establishing liability and recovering damages, and provides an immediate, certain, and meaningful cash recovery of unpaid overtime, which is not only a strong result in itself but especially in view of the defenses at issue. This Settlement was carefully negotiated based on a substantial investigation by Class Counsel, and the review and analysis of documents produced by Defendants. *Id.* Moreover,"[r]ather than facing the prospect of costly litigation and no recovery, the class members in this case will instead 'obtain the immediate and certain benefit of a cash settlement.'" *Thompson v. Seagle Pizza, Inc.,* No. 3:20-cv-16-DJH-RSE, 2022 WL 1431084, at *7 (W.D. Ky. May 5, 2022) (citation omitted). This factor is satisfied.

## 5. *Opinions of Class Counsel and Class Representatives*

The Settlement reflects what Class Counsel believes to be a fair and reasonable settlement of disputed claims given the risks that Plaintiff would face if the case proceeded in litigation. Foster Dec. at ¶ 22. The Agreement affords the Settlement Collective and Class Members with "significant and meaningful financial benefits." *Id*; *accord Athan v. US. Steel Corp.,* 523 F. Supp. 3d 960, 968 (E.D. Mich. 2021). Moreover, Plaintiff has indicated his support

by signing the Settlement Agreement. *See generally*, S.A.; Foster Dec. at ¶ 23. This factor is also satisfied.

### 6. *Reaction of Absent Class Members*

"[T]he reaction of absent class members does not yet weigh one way or the other in determining whether settlement is appropriate. At the pre-notice stage, the Court does not yet know how absent class members will respond." *Lott,* 2023 WL 2562407, at *5. However, based upon the meaningful and certain monetary benefits provided under the Settlement, significant objections or requests for exclusion are not anticipated.

### 7. *Public Interest*

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Id.* (quoting *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992)). Here, the Settlement will fairly resolve protracted litigation and avoid the uncertainties and risks of continued litigation. The Agreement contains no provisions contrary to the purposes or implementation of the FLSA, such as a confidentiality clause or an overbroad release. Indeed, the Settlement furthers the purposes of the FLSA by providing members with a substantial recovery for unpaid wages and overtime they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy). All Settlement Collective and Class Members who do not opt out will receive a Settlement Payment. Moreover, none will release their FLSA claims against Defendants unless they cash or deposit their Settlement Check. S.A. § 40 (the cashing of the check will be treated as a consent under the FLSA, which will be filed with the Court, see S.A. §§ 41, 42, 35). For all these reasons, the FLSA Collective Settlement should be approved.

## II.    THE SETTLEMENT OF THE CLASS CLAIMS SHOULD BE PRELIMINARILY APPROVED.

Ordinarily, where the parties reach a proposed class action settlement before the Court certifies a Rule 23 class, before the Court can preliminarily approve the Settlement of the class claims, it must preliminarily certify the class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, appoint class counsel, and approve the class representative. *Elliott v. LVNV Funding, LLC,* No. 3:16-cv-00675-RGJ, 2019 WL 4007219, at *2 (W.D. Ky. Aug. 23, 2019) (citing *Int'l Union,* 497 F.3d at 631; Fed. R. Civ. P. 23). "Afterward, it must determine whether the [Settlement Agreement] is fair, adequate, and reasonable." *Id.*[10] Here, the Court has already certified, over Defendants' objections, a Rule 23 class, appointed class counsel, and approved the class representative.  DN 101.  However, even if the Court re-reviewed the Rule 23 requirements, they are met.  Further, the Settlement is fair, adequate and reasonable.

### A.    <u>The Rule 23 Class Should Be Preliminarily Certified.</u>

Rule 23(a) imposes requirements of "numerosity, commonality, typicality, and adequacy of representation." *Elliott v. LVNV Funding, LLC,* No. 3:16-cv-00675-RGJ, 2019 WL 4007219, at *3 (W.D. Ky. Aug. 23, 2019). Together with the Rule 23(a) prerequisites, the moving parties "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." *Id.*

#### 1.    *Numerosity Is Satisfied.*

The first requirement for certification is that the members of the proposed classes are

---

[10]    Defendants move for Rule 23 certification for settlement purposes only.  By so doing, Defendants do not waive any arguments they made in opposition to Plaintiff's Motion for Class Certification, particularly in the event that the Settlement is not approved and the Court must rule on that Motion and Defendants' opposition thereto.  In this posture, Defendants do not adopt, but rather do not contest for settlement purpose only, the representations in this section.

so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(l). Although the Rule provides no firm number, the Sixth Circuit has found that a class of 35 was sufficient to meet the numerosity requirement. *See In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1076 (6th Cir. 1996) (citing *Afro Am. Patrolmen's League v. Duck,* 503 F.2d 294 (6th Cir. 1974)). Here, the Settlement Collective and Class of approximately sixty drivers easily satisfies the numerosity requirement. *See* S.A. § 14(V); Foster Dec. at ¶ 10.

### 2.    *Commonality Is Satisfied.*

The second Rule 23(a) prerequisite is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "'Although Rule 23(a)(2) speaks of 'questions' in the plural ... there need only be one question common to the class.'" *Elliott,* 2019 WL 4007219, at *3 (quoting *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998)). "'It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality.'" *Id.* "What the Court must look for 'is a common issue the resolution of which will advance the litigation.'" *Id.*

Here, there are numerous issues of fact and law that are common among the members of the Settlement Collective and Class. For example, Plaintiff alleged that Defendants had a uniform practice of paying drivers on a percent-of-load basis, without additional compensation for work beyond forty hours in a week; Defendants do not dispute this. Plaintiff also allege that Defendants were required to pay overtime; Defendant disputes this, asserting that the Motor Carrier's Act exemption is applicable, including because of transport of material to states other than Kentucky by rail and barge after the material was delivered by Ray Jones Trucking's drivers. These common questions of law and fact apply uniformly to all class members and satisfy the commonality requirement. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 460 (2016);

*Morris v. US Foods, Inc.,* No. 8:20-cv-105-SDM- CPT, 2021 WL 2954741, at *5 (M.D. Fla. May 17, 2021) (commonality existed where all employees spent time donning and doffing safety equipment even though the amount of time each employee took differed).

### 3.    *Typicality Is Satisfied.*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "'A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Elliott,* 2019 WL 4007219, at *4 (quoting *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 561 (6th Cir. 2007)). "'[F]or the district court to conclude that the typicality requirement is satisfied, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.'" *Id.* (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 525 n.31 (6th Cir. 1976)).

Here, Plaintiff asserts that his claims and those of the Settlement Collective and Class all arise out of the same alleged policies and course of conduct of Defendants. As such, the typicality requirement is satisfied.

### 4.    *Adequacy Is Satisfied.*

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "'There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Elliott,* 2019 WL 4007219, at *4 (citation omitted). Here, the damages in unpaid wages and overtime alleged by the Plaintiff are "substantially the same as the injuries accruing" to the Settlement Collective and Class. *Id.* Here,

19

Plaintiff shares "common interests" with the unnamed members of the settlement class and can be appointed as class representative. *Id.; see also* Foster Dec. at ¶ 25.

Under the second prong of Rule 23(a)(4), the Court must also look to the adequacy of the representative plaintiff's representation "to determine whether class counsel [is] qualified, experienced and generally able to conduct the litigation." *Elliott,* 2019 WL 4007219, at *4 (citing *Stout v. JD. Byrider,* 228 F.3d 709, 717 (6th Cir. 2000)). Here, proposed Class Counsel is experienced and has successfully acted as representative counsel in numerous wage and hour collective actions, and as Class Counsel in class actions in Kentucky and Tennessee, as well as having appeared *pro hac vice* in wage and hour matters pending in Virginia, West Virginia, Indiana, and Illinois. Foster Dec. at ¶¶ 4-7. Class Counsel's independent investigation and analysis of this case, zealous prosecution of the claims asserted, good faith participation in the judicial settlement conference process, and achievement of the Settlement is wholly indicative of counsel's adequacy to serve. Foster Dec. at ¶ 19. As shown above, the adequacy requirement is satisfied.

## 5. *Predominance and Superiority Are Satisfied.*

After satisfying Rule 23(a), a class action may be maintained if "the court finds that questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "'The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *Elliott,* 2019 WL 4007219, at *5 (quoting *In re Am. Med. Sys., Inc.,* 75 F.3d at 1084). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common

questions and render the class action valueless." *Id.* (citation omitted). "Common questions need only predominate: they need not be dispositive of the litigation." *Id.*

Here, based on the Plaintiff's allegations of Defendants' common practices and management, common questions of law and fact predominate over any potential individual issues. As Plaintiff contends, common proof would be offered at trial to demonstrate Defendants' alleged common course of conduct and the common damages that were suffered by the drivers affected. Plaintiff further contends that those damages can be measured on a class basis using objective data, including Defendants' own testimony and records.[11]

Class treatment of Plaintiff's claims is the superior method for fairly and efficiently adjudicating the controversy, particularly where "the amount of damages incurred by individual class members likely cannot justify pursuing individual actions, making a class action a valuable tool for all class members." *Elliott,* 2019 WL 4007219, at *6 (citing *Pfaff v. Whole Foods Mkt. Grp. Inc.,* No. 1:09-cv-02954, 2010 WL 3834240, at *7 (N.D. Ohio Sept. 29, 2010) ("[T]he most compelling rationale for finding superiority in a class action is the existence of a 'negative value suit,' ... [where] costs of enforcement in an individual action would exceed the expected individual recovery.")). As such, the predominance and superiority requirements are satisfied. As demonstrated above, the requirements of Rule 23 certification are met.

   **B.**    **The Settlement of the Class Claims Is Fair and Reasonable.**

Once a class is certified, the Court focuses on whether "giv[ing] notice is justified by the parties' showing that the court will likely be able to ... approve the proposal under Rule 23(e)(2)

---

[11]    The class certification sought is for settlement purposes only. Defendants have denied and continue to vehemently deny any wrongdoing or that Plaintiff is owed any unpaid wages or overtime, and if litigation were to continue Defendants would challenge not only the merits of Plaintiff's claims but also the certification of any class or collective.

and the factors set forth by the Sixth Circuit." *Lott,* 2023 WL 2562407, at *1 (citing Fed. R. Civ.P. 23(e)(l)(B)). The Court first analyses the factors under Rule 23(e)(2) and secondly and separately analyses the factors set forth by the Sixth Circuit. However, "'[a]t the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.'" *Lott,* 2023 WL 2562407, at *1 (quoting *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.,* No. 3:13-cv-00489,2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015) (quoting MCL § 21.662 (4th ed.)).

To approve a proposed settlement, the court must determine whether it is "fair, reasonable, and adequate." *Whitlock v. FSL Mgmt., LLC,* 843 F.3d 1084, 1093 (6th Cir. 2016). Rule 23(e) provides the court with factors to consider when making this determination. "The Advisory Committee, in amending Rule 23(e), did not intend to displace factors developed by the circuit courts in deciding whether to approve a proposed settlement agreement, but to 'focus the court ... on the core concerns ... that should guide' the court's determination." *Lott,* 2023 WL 2562407, at *1 (citing Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amend.). The Sixth Circuit factors are also used to evaluate the reasonableness of settlements under the FLSA. *Does 1-2,* 925 F.3d at 894-95 (citing *Int'l Union,* 497 F.3d at 631). "This Court thus considers both the Rule 23(e) factors and the factors set forth by the Sixth Circuit." *Lott,* 2023 WL 2562407, at *1 (citing *Peck v. Air Evac EMS, Inc.,* No. 5:18-cv-615, 2019 WL 3219150, at *5 (E.D. Ky. July 17, 2019)).

Under the Rule 23(e)(2) factors, a settlement is "fair, reasonable, and adequate" if: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of

any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Here, as demonstrated in the Adequacy section above, the proposed Class Representatives and Class Counsel have adequately represented the class, and the proposal was negotiated at arm's length, including through the Magistrate Judge at a settlement conference and another independent mediator. Foster Dec. at ¶ 20. The relief provided for the class is adequate, in considering the costs, risks, and delay in continued litigation. *Id.* at ¶ 21. Also, while a request for attorneys' fees and costs will be addressed by a separate motion hereafter, the proposed award of attorney's fees of up to one-third of the Gross Settlement Amount[12] is within the range of approval, and under the Settlement, payment would be made after the Effective Date of the Settlement. *See Wilson v. Anthem Health Plans of Ky., Inc.,* No. 3:14-cv-743, 2019 WL 6898662, at *4 (W.D. Ky. Dec. 18, 2019) ("Fee awards typically range from 20 to 50 percent of the common fund."); Foster Dec. at ¶ 24. Also, the Parties have submitted all agreements required to be identified under Rule 23(e)(3). *See id.* at ¶ 18, Settlement Agreement. Finally, the plan of allocation for the net Settlement proceeds treats class members equitably relative to each other, as the funds will be allocated to Settlement Collective and Class Members (who do not opt out) pursuant to a common formula based on their applicable workweeks.[13] S.A.

---

[12]    The Settlement Agreement further provides for adjustment of Class Counsel's fee in the event of requests for exclusions, preventing Class Counsel's fees' share of the overall settlement from rising above one-third.  See S.A. §§ 30 (last paragraph) and 37.

[13]    As discussed above, the proposed formula takes into account: (a) the risk of Rule 23 class certification not being ultimately sustained; and (b) factual differences relating to the claims and defenses in various time periods, including (i) Defendants' assertion that coal driven by the Settlement Collective and Class Members was transported by others out of state prior to January 30, 2020.  S.A. § 30.

§ 14(P), 14(V) and 30; Foster Dec. at ¶¶ 12-15.

As such, the Settlement satisfies the factors under federal Rule 23(e)(2) for purposes of preliminary approval. Moreover, as discussed above (FLSA settlement approval), Plaintiff has demonstrated that the Settlement meets the Sixth Circuit factors. Accordingly, "[b]ecause the parties' showing satisfies the Rule 23(e)(2) and Sixth Circuit factors, the Court will likely be able to approve the Settlement as 'fair, reasonable, and adequate.'" *Lott,* 2023 WL 2562407, at *6.

### III.    THE COURT SHOULD APPOINT PLAINTIFF'S COUNSEL TO SERVE AS CLASS COUNSEL.

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). "In making that determination, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Elliott,* 2019 WL 4007219, at *6 (citing Fed. R. Civ. P. 23(g)(a)).

Here, Plaintiff's Counsel has worked more than three years to develop, discover, litigate, and ultimately settle the claims of Plaintiff and the truck drivers he seeks to represent. Foster Dec. at ¶¶ 19-20, 24 (detailing the work of Plaintiff's Counsel).  In undertaking this representation, Plaintiff's Counsel has expended in excess of two hundred hours of counsel's time and over two hundred twenty-five hours of other employees' data entry time.  Foster Dec. at ¶ 24. To date, Plaintiff's Counsel has received no compensation for professional time, nor reimbursement of actual out-of-pocket litigation expenses. *Id.*  In addition, Plaintiff's Counsel is experienced in handling FLSA collective and class actions, as well as other complex litigations. Foster Dec. at ¶¶ 5-7. Respectfully, the undersigned Plaintiff's Counsel should be appointed to serve as Class Counsel.

## IV.   THE COURT SHOULD APPOINT PLAINTIFF TO SERVE AS CLASS REPRESENTATIVE.

In appointing class representatives, a court should ensure that the proposed representatives "will adequately represent that class." *Davis v. Omnicare, Inc.,* No. 5:18-cv-142-REW, 2021 WL 1214501, at *7 (E.D. Ky. Mar. 30, 2021) (citing *In re Dry Max Pampers Litig.,* 724 F.3d 713, 721 (6th Cir. 2013)). Here, Plaintiff is proposed to serve as Class representative. Plaintiff has demonstrated his commitment to this pursuit of this litigation and the collective interests of the Settlement Collective and Class and should thus be approved. Foster Dec. at ¶ 25.

## V.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

In granting preliminary approval, the Court also "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Green v. Platinum Rests. Mid-Am. LLC,* No. 3:14-cv-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (citing Fed. R. Civ. P. 23(e)(l)). In accord with Rule 23(c)(2)(B), the notice must include "in plain, easily understood language": (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *Id.*

Here, Class Counsel will mail and, to the extent email addresses are known, email the Notice to each of the members of the Settlement Collective and Class, based on the employment records of the Defendants. Foster Dec. at ¶ 10; S.A.§ 20-23. This represents the "the best notice practicable," as required under Rule 23(c)(2)(B). *Id.* The proposed Notice here includes each of the above requisite information[14] and uses plain, easily understood language. As such, the form

---

[14]      The Notice will contain an attached schedule that will provide the exact amount each class member will

and method of Notice should be approved.

## VI.    THE PROPOSED IMPLEMENTATION SCHEDULE SHOULD BE ADOPTED.

The following is the proposed schedule for notice and final approval of the Settlement:

| | |
|---|---|
| Defendants send CAFA Notice | Within ten (10) business days after the submission of the Settlement Agreement to the Court. |
| Defendants Provide Settlement Collective and Class Contact Information | Within ten (10) business days, or as soon as practicable, after entry of the Court's Preliminary Approval Order. |
| Notice Sent by Class Counsel | Within ten (10) days of receiving the Settlement Collective and Class List. |
| Plaintiff's Motion for Approval of Attorneys' Fees, Costs, and Service Awards | Due ten (10) business days before the Objection and Opt-Out Deadline stated in Notice to Class Members |
| Deadline to postmark objections or requests for exclusion | Forty-five (45) after the Notice of Settlement is initially mailed by Class Counsel |
| Motion for Final Approval of Collective and Class Action | Due ten (10) business days before Final Approval Hearing Date |
| Hearing on Final Approval of Settlement (Fairness Hearing) | Approximately one hundred (100) days after entry of the Court's Order on this Motion |

---

receive if the Court grants approval to the settlement.  See Exhibit 1 at 20 (S.A. Exhibit A, paragraph beginning "Your Settlement Award will be calculated…"), 23 (Exhibit A to S.A. Exhibit A).  The actual amount the class members will receive if the Court grants approval will likely be slightly higher than the amount described on the notice, as the amounts to be included on the schedule will be based on Plaintiff's counsel being reimbursed $5,000.00 (the maximum amount contemplated by the notice), whereas actual expense will likely be slightly less than that.  The parties are exchanging information needed to finalize their calculations needed to prepare the schedule, see S.A. at ¶ 18, and anticipate being able to complete that process before notice is due; the parties will also be able to file the actual notice, as sent (i.e., including the schedule) with their motion for final approval.

## **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that the Court grant this Motion and enter the Parties' proposed Preliminary Approval Order.

*/s/ Mark N. Foster*
Mark N. Foster
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, Kentucky 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff*

/s/*Cynthia L. Effinger* with Permission
By Mark N. Foster
Cynthia L. Effinger
McBRAYER PLLC
500 West Jefferson Street, Suite 2400
Louisville, Kentucky 40202 (502) 327-5400
ceffinger@mcbrayerfirm.com
*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date indicated on the Court's CM/ECF notice of filing, this document was filed through the Court CM/ECF filing system.

/s/ Mark N. Foster
Mark N. Foster