UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:22-CV-00005-GNS-HBB

SAMUEL BACK                                                    PLAINTIFF
as Class Representative

v.

RAY JONES TRUCKING, INC. et al.                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Parties' joint motion for preliminary approval of a class action certification and settlement (DN 109).[1]  The motion is ripe for adjudication.

## I.    BACKGROUND

Plaintiff Samuel Back ("Plaintiff") brought this suit on January 10, 2022, on behalf of himself and "[a]ll [o]thers [s]imilarly-[s]ituated," against Defendants Ray Jones Trucking, Inc. ("Ray Jones") and individuals Teresa Jones, Grant Jones, and Steve Jones (collectively, "Defendants," and including Plaintiff, "Parties").  (*See* Compl. ¶¶ 1, 4, DN 1).  Ray Jones is a Kentucky corporation that transports commercial materials including coal within the state of Kentucky.  (Compl. ¶¶ 6, 11, 45).  Plaintiff was employed as a truck driver for Ray Jones, and he contends that he and many other employees were denied overtime compensation due to them under

---

[1] The initial version of this motion was filed on March 21, 2025 (DN 106).  The Parties were ordered to supplement the record to address several issues for which the Court required clarification before it could make a determination.  (Order, DN 108).  On August 11, 2025, the Parties submitted an amended joint motion (DN 109) and other requisite documents, addressing all issues outlined by the Court's Order.  Therefore, the previous motion for class action and settlement approval (DN 106) is hereby denied as moot, and the Parties' amended documents shall supplant their previous versions for the purposes of this Order.

the Fair Labor Standards Act ("FLSA") and the Kentucky Wage and Hour Act ("KWHA"). (Compl. ¶¶ 1, 70).

In his Complaint, Plaintiff proposed two collective actions, which the Court refers to as the "FLSA Collective" and the "Rule 23 Class," respectively. (Mem. Op. & Order 2-3, DN 101). This Court granted conditional certification for Plaintiff's FLSA Collective Action on June 22, 2022, which was the first step in a two-step process commonly used by this Court in FLSA collective actions. (Mem. Op. & Order, DN 35); *see, e.g.*, *York v. Velox Express, Inc.*, 524 F. Supp. 3d 679, 685 (W.D. Ky. Mar. 10, 2021); *Hall v. Gannett Co.*, No. 3:19-CV-296, 2021 WL 231310, at *2 (W.D. Ky. Jan. 22, 2021). This conditional certification allowed Plaintiff to notify prospective opt-in plaintiffs. *See Hall*, 2021 WL 231310, at *2. Defendants sought to decertify the FLSA Collective, which the Court denied. (Defs.' Mot. Decert. 4, DN 78; Mem. Op. & Order 23). Plaintiff moved to certify the Rule 23 Class, which, by definition, includes the FLSA Collective members, as well as any Ray Jones driver who was allegedly wrongfully deprived of overtime compensation for work performed since January 8, 2017.[2] (Pl.'s Resp. Defs.' Mot. Decert. 5). Plaintiff's motion was granted, and the Rule 23 class was certified with Plaintiff appointed as class representative and Plaintiff's counsel, Mark Foster ("Foster"), appointed as class counsel. (Mem. Op. & and Order 22-23).

The Parties now move the Court to approve a joint settlement agreement. (Parties' Joint Mot. Prelim. Approval Class Action Settlement 1, DN 109 [hereinafter Joint Mot.]; Joint Mot. Ex. 1, DN 109-1 [hereinafter Agreement]). They also seek to preliminarily certify, for settlement purposes only, a class action under Rule 23 (hereinafter "Settlement Class") consisting of "all

---

[2] In Plaintiff's motion and his proposed order (DN 77-1), he did not seek final certification of the FLSA Collective.

current and former truck driver employees of Ray Jones Trucking, Inc. who were not paid at an overtime rate of pay for such employee's work in excess of forty hours in one or more workweeks from January 8, 2017, though November 20, 2024" (hereinafter "Applicable Class Period"). (Joint Mot. 1-2). The Settlement Class will include approximately 60 individuals, including Plaintiff and the 14 employees who previously opted in to the FLSA collective. (Foster Decl. ¶ 10, DN 109-2; Agreement 4). Under the Agreement, Defendants would provide contact information for all class members, who will be given notice and the opportunity to opt out of the settlement. (Agreement 5-7). Like the previously approved Rule 23 class, the Parties propose that Plaintiff be appointed class representative and Foster appointed as class counsel. (Joint Mot. ¶¶ 4-5).

The gross settlement amount is capped at $450,000.00, contingent upon whether any class member opts out of the settlement. (Agreement 3-4). Up to one-third of this gross settlement amount would be paid to Foster in attorney's fees, as would up to an additional $5,000.00 in reimbursement for Foster's "reasonable out-of-pocket costs and expenses, including [a]ministrative [c]osts." (Agreement 10-11). Lastly, Plaintiff would collect up to $20,000.00 as a service award for bringing the lawsuit, which would be separate and apart from any sum he may recover as a member of the Settlement Class. (Agreement 11). The net settlement amount, which is the amount remaining after deducting Foster's fees and costs as well as Plaintiff's service reward, would be approximately $275,000.00 if no member opts out of the Agreement. This amount would be distributed to the class members using a point system based upon each member's length of tenure with Ray Jones Trucking, Inc. and favors both the Opt-In Plaintiffs as well as those who worked for Ray Jones more recently. (*See* Agreement 8-9). To provide notice of the settlement, the Parties have prepared a Notice of Class Action Settlement (hereinafter "Notice"). (Agreement 17-22). The Notice explains the nature of this action, and the Agreement and will be

mailed, along with instructions for opting out, to all members.  (Agreement 17-22).  The Parties have also provided a proposed schedule for completing the settlement approval process.  (Joint Mot. 2-3).

## II.    JURISDICTION

The Court has subject-matter jurisdiction because a federal question is presented.  *See* 28 U.S.C. § 1331.  In addition, the Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).

## III.    DISCUSSION

### A.    Conditional Certification of the Settlement Class

The Parties jointly move the Court to conditionally certify a class under Rule 23 for the purposes of settling the underlying dispute.  (Joint Mot. 2).  "Before the Court can preliminarily approve the class action settlement, it must preliminarily certify the class under Rule 23(a) and (b) of the Federal Rules of the Civil Procedure, appoint class counsel, and approve the class representative."  *Peck v. Air Evac EMS, Inc.*, No. CV 5:18-615-DCR, 2019 WL 3219150, at *2 (E.D. Ky. July 17, 2019).  The proposed Settlement Class contains an identical definition of class member as the previously certified Rule 23 class; the only difference between the two is that the Settlement Class has an Appliable Class Period ending November 20, 2024 (i.e., the date "on which parties reached agreement on the material terms of the settlement").  (Joint Am. Mem. Supp. Joint Mot. 25, DN 110).

Granting Rule 23 class certification involves a two-step process:  First, a court must conduct "a rigorous analysis[] that the prerequisites of Rule 23(a) have been satisfied."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  Those requirements are:  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a).  All of

these requirements must be satisfied, or certification must be denied.  *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc)).  If the class meets all four Rule 23(a) requirements, the Parties must also demonstrate that "the proposed class [] [] meet[s] at least one of the three requirements listed in Rule 23(b)."  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citations omitted).

### 1.    *Rule 23(a) Analysis*

#### a.    **Numerosity**

The first requirement for class certification is that "the class is so numerous that joinder of all members is impracticable . . . ."  Fed. R. Civ. P. 23(a)(1).  As the Sixth Circuit has explained:

> There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative.  However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1).

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (internal citation omitted) (citation omitted).  The Court previously determined that initial Rule 23 class, with an anticipated 52 class members, was "sufficiently numerous to make joinder impracticable."  (Mem. Op. & Order 12 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976))).  The current proposed class would include all potential members of the previous class, and the Parties anticipate 60 total members.  (Foster Decl. ¶ 10).  Therefore, the proposed Settlement Class satisfies Rule 23's numerosity requirement.

#### b.    **Commonality**

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "Although Rule 23(a)(2) speaks of 'questions' in the plural, . . . there need only be one question common to the class."  *Sprague*, 133 F.3d at 397 (citing *In re Am. Med*

*Sys.*, 75 F.3d 1069, 1080 (6th Cir. 1996)).  As the Supreme Court has stated, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Falcon*, 457 U.S. at 157).  "The claims of the class members must depend upon a common contention [that] . . . 'must be of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Powell v. Tosh*, 280 F.R.D. 296, 305 (W.D. Ky. 2012) (quoting *Dukes*, 564 U.S. at 350).  Thus, the point of the commonality analysis is to determine "common issue[s] the resolution of which will advance the litigation."  *Sprague*, 133 F.3d at 397.

The Parties assert that there are common issues of fact within the Settlement Class, including:

> (i)     whether transportation by others during different time periods during the Applicable Class Period, including by rail and barge, of cargo driven by the Settlement Class members supported the applicability of the Motor Carrier's Act exemption to the drivers[;]
> (ii)    whether Defendant Ray Jones Trucking, Inc.'s statements to the Federal Motor Carrier Safety Administration regarding the nature of its operation and its drivers affected the applicability of the Motor Carrier's Act exemption to the drivers[;]
> (iii)   whether Defendants acted willfully in failing to pay overtime compensation to the Settlement Class members; and
> (iv)    whether Defendants acted in good faith.

(Proposed Order 3, DN 109-6).  The Court has already determined that questions regarding "whether the MCA exception applies" and "whether the proposed class of plaintiffs were wrongfully denied overtime compensation" represent common issues amongst class members. (Mem. Op. & Order 10).  The class definition has not changed, and thus the potential plaintiffs of the Settlement Class would still share the same issues—those "which will advance the litigation."

*Sprague*, 133 F.3d at 397. Therefore, the requirement of commonality is also met for the Settlement Class.

### c.    Typicality

Third, a court must consider whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague*, 133 F.3d at 399 (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082).

Regarding the previously approved Rule 23 class, the Court found that typicality was met because "all proposed class members were employees of Ray Jones during the specified period and were allegedly injured in the same way by being denied overtime compensation in violation of the FLSA and KHWA." (Mem. Op. & Order 13-14). In the current case, the class definition has not changed, and therefore, the claims of Plaintiff under the Settlement Class are typical of those for the entire proposed class. Typicality is satisfied.

### d.    Adequacy of Representation

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: (1) [t]he representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will

vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 524-25 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)).

The Court already approved Plaintiff as class representative and Foster as class counsel for the initial Rule 23 Class. (Mem. Op. & Order 22-23). In the current case, nothing has changed regarding Plaintiff's and Foster's capabilities to represent the Settlement Class for the purposes of the settlement, and Foster has again provided the Court with evidence of his experience in class action suits, his dedication to the current litigation, and his availability to see the settlement through to its conclusion. (Foster Decl. ¶¶ 6-25). For these reasons, the adequacy of representation requirement is met. Plaintiff shall be appointed as class representative of the Settlement Class, and Foster shall be appointed as class counsel.

## 2. *Rule 23(b)(3) Analysis*

In addition to Fed. R. Civ. P. 23(a), "[the] parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). In the current case, the Parties seek to conditionally certify the class under Rule 23(b)(3). (Joint Mot. 2). Rule 23(b)(3) "requires the district court to find 'that the questions of law or fact common to class members predominate over any questions affecting only individual members' and that the class action is 'superior to other available methods' to adjudicate the controversy fairly and efficiently." Fed. R. Civ. P. 23(b)(3); *In re Whirlpool*, 722 F.3d at 850-51. The predominance requirement of Rule 23(b)(3) is like Rule 23(a)(2)'s commonality requirement "in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (citation omitted). The central question is whether the issues common to the class "[are] at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501

F.3d 592, 619 (6th Cir. 2007). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996)). "Common questions need only predominate: they need not be dispositive of the litigation." *Id*. (quoting *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)).

The Court has already certified the initial class under Rule 23(b)(3), finding that common questions shared by the class members "sufficiently predominate over any questions affecting only individual members." (Mem. Op. & Order 17). Similarly, here, the Parties contend that "Plaintiff's allegations of Defendants' common practices and management [are] common questions of law and fact [that] predominate over any potential individual issues." (Joint Am. Mem. Supp. Joint Mot. 14). Seeing as the proposed Settlement Class mirrors the previously approved class, the Court finds that the requirements under Rule 23(b)(3) are also met here.

### B. The Settlement is "Fair, Reasonable, and Adequate."

"Class action suits may be settled only with court approval." *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *2 (W.D. Ky. Apr. 27, 2022) (citing Fed. R. Civ. P. 23(e)). Settlement approval comprises a two-step process: (1) "[t]he judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing"; and (2) "[i]f so, the final decision on approval is made after the hearing." *Ann. Manual Complex Lit.* (Fourth) § 13.14 (2019); *see also Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001)). "At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for

final approval." *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489, 2015 WL 1976398, at *1 (W.D. Ky. May 4, 2015) (citation omitted).

The Court must find that the settlement agreement is "fair, reasonable, and adequate." *Whitlock v. FSL Mgmt., L.L.C.*, 843 F.3d 1084, 1093 (6th Cir. 2016). Rule 23(e) outlines four factors for courts to consider in making this determination:

> (A)    the class representatives and class counsel have adequately represented the class;
> (B)    the proposal was negotiated at arm's length;
> (C)    the relief provided for the class is adequate, taking into account:
> > (i)    the costs, risks, and delay of trial and appeal;
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv)    any agreement required to be identified under Rule 23(e)(3);[3] and
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, the Sixth Circuit provides the following factors to aid in determining whether a settlement agreement is "fair, reasonable, and adequate" under Rule 23(e):

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) [hereinafter *UAW*] (citations omitted). "These factors are also used to determine the reasonableness of settlement agreements under the FLSA." *Green*, 2022 WL 1240432, at *4 (citing *Does 1-2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 894-95 (6th Cir. 2019)).

---

[3] Rule 23(e)(3) states that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The Parties have filed the Agreement, so this subfactor is met.

### 3.     *Rule 23(e)(2) Factors*

#### a.     **Adequacy of Class Representative and Class Counsel**

The Court must determine whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). In the current case, Plaintiff and Foster have litigated the case for over three years and a settlement was reached "after very substantial discovery and motion practice, including depositions, interrogatories, extensive document review and data analysis . . . ." (Foster Decl. ¶ 20). Furthermore, Foster has indicated that Plaintiff "participated actively throughout settlement discussions, including throughout the entirety of two judicial settlement conferences[,]" indicating a high level of involvement in the negotiating process. (Foster Decl. ¶ 23). Foster has participated as counsel in several previous class actions suits, and there is ample evidence that both Plaintiff and Foster would represent this class well and continue to pursue these claims zealously in the event the case continued to trial. (*See* Foster Decl. ¶¶ 6-7). This factor, therefore, supports settlement.

#### b.     **Arm's Length Negotiation**

Foster has indicated that "[s]ettlement was only reached through the efforts of two full days of mediation (including one with the Magistrate Judge), throughout which the parties engaged in arms' length negotiations, followed by further negotiations after the Court's ruling on Plaintiff's Motion for Rule 23 Class Certification." (Foster Decl. ¶ 20; *see also* Agreement 2). Thus, this factor also supports settlement.

#### c.     **Adequate Relief Provided to the Class**

##### i.     **Costs, Risks, and Delay of Trial and Appeal**

Foster asserts the settlement "is in the best interests of the Settlement Class, and that the relief provided is fair, reasonable, and adequate, especially when considering the costs, risks, and

delay in continued litigation." (Foster Decl. ¶ 21). Foster also acknowledges that the settlement "avoids the multitude of risks to establishing liability and recovering damages, and provides a prompt, certain, and meaningful cash recovery of unpaid wages and overtime." (Foster Decl. ¶ 21). Because Plaintiff and the class counsel accounted for risks and costs of further litigating the claims when arriving at a final settlement figure, this subfactor weighs in favor of settlement.

### ii.    Effectiveness of Proposed Distribution Method

The net settlement amount is to be divided amongst class members pursuant to a formula based on tenure (i.e., workweeks) during the Applicable Class Period, with any work performed in the following workweeks being assigned the following point values:

> Opt-In Plaintiff, Workweek Prior to or Including January 30, 2020[:]  5 points
> Opt-In Plaintiff, Workweek After January 30, 2020[:]  10 points
> Non-Opt-In Driver, Workweek Prior to or Including January 30, 2020[:]  4 points
> Non-Opt-In Driver, Workweek After January 30, 2020[:]  8 points

(Agreement 8). The total number of points amongst all Settlement Class members "will be divided into the Net Settlement Amount to reach a per-point dollar figure. That figure will then be multiplied by each Settlement Class Member's number of settlement points to determine the Settlement Class Member's Settlement Award." (Agreement 19).

This proposed method appears to be an effective means to distribute the net settlement amount among Settlement Class members. Because the point system is based upon the records already in Defendants' possession and total amounts per member will be calculated automatically by the Parties, members will not be required to validate their previous work hours. (Agreement 20). Any member who does not opt out will automatically receive a check for their settlement award. (Agreement 12). Seeing as this method ensures that each member will be paid a standardized award from the net settlement amount, this factor weighs in favor of settlement.

### iii.    Terms of Attorneys' Fees

"Trial courts within the Sixth Circuit have discretion to calculate an award of attorneys' fees by using either (1) a percentage of the fund calculation, or (2) a lodestar/multiplier approach." *New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 633 (W.D. Ky. 2006) (citation omitted).  Nevertheless, "courts in the Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common fund cases."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 532.  Thus, the Court will look to the reasonableness of Foster's proposed fee as a percentage of the gross settlement amount ($450,000.00).

The Agreement states that Foster "will file a motion for approval of attorneys' fees and costs prior to final approval and pursuant to the schedule ordered by the Court.  Class Counsel may apply for attorneys' fees in the amount of up to one-third (⅓) of the Gross Settlement Amount as compensation for all work performed . . . ."  (Agreement 10).  Foster may also seek reimbursement of up to $5,000.00 for costs he has incurred throughout the litigation process.  (Agreement 10).  Foster's attorney's fees (excluding the $5,000.00 cost reimbursement), and Plaintiff's service reward are to be reduced if one or more members chooses to opt out of the settlement award. (Agreement 9).[4]  The rate of one-third the gross settlement amount is well within the range of

---

[4] The Agreement provides the follow process for fee/reward reductions:

> [I]n the event one or more Settlement Class Members opt out of the Settlement, Class Counsel's fees preliminarily approved by the Court and Named Plaintiff's service award preliminarily approved by the Court shall be multiplied by the fraction generated by dividing the numerator of the total amount of the Net Settlement Award to be paid to Settlement Class Members who do not opt-out of the Settlement under the formula above (i.e., the amount listed on the notice as the amount for such persons) by the divisor of such number plus the amount listed on the notice as the amount the opting-out persons would have received, but for their act of opting-out . . . .

(Agreement 9).

attorneys' fees previously approved by other class action settlements by the Sixth Circuit and this Court. *See Green*, 2022 WL 1240432, at *3-4 (finding attorneys' fees of 39% of the common fund reasonable); *New England Health Care*, 234 F.R.D. at 633 ("Fee awards in common fund cases typically range 'from 20 to 50 percent of the common fund created.'" (citation omitted)); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *11 (W.D. Ky. Dec. 22, 2009) (preliminarily approving attorneys' fees representing over 50% of the common fund). The proposed rate of up to one-third of the net settlement amount (plus reimbursed litigation costs) is therefore reasonable, and this subfactor supports settlement.

### d.    Equitable Treatment of Class Members

The distribution method delineated above assigns points based upon employee tenure. (Agreement 8-9). The point values are slightly higher for the Opt-in Plaintiffs compared to those who will join the class once the settlement is preliminarily approved. (Agreement 8). Additionally, weeks after January 30, 2020, will be credited twice as many points as those weeks before this date. (Agreement 8). The Parties contend that:

> this formula is designed to account for (a) the risk of the Court concluding that state law claims cannot continue to proceed as a Rule 23 class; [and] (b) the varying levels of risk to Settlement Class Members associated with Defendants' defenses and the facts developed in discovery relating to loads transported by drivers during the different time periods.

(Agreement 8). Effectively, the formula is designed to reflect Defendants' available defense at trial that Ray Jones truck drivers allegedly worked in interstate commerce prior to January 30, 2020, and thus would not be entitled to overtime pay. (*See* Agreement 18). Furthermore, it reflects the fact that if the Rule 23 class certification ultimately fails, then only the Opt-in Plaintiffs would remain in the action. (Foster Decl. ¶ 14). Previous class action settlements approved by this Court contained similar point systems based upon amount of time worked. *See Southard v. Newcomb*

*Oil Co., LLC*, No. 3:21-CV-607-DJH-CHL, 2024 WL 4263639, at *1 (W.D. Ky. Sept. 23, 2024); *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-44-DJH, 2016 WL 7320890, at *1 (W.D. Ky. Dec. 15, 2016). Additionally, at least one case has approved a point-based system that favors employees who worked more recently. *Déjà Vu Servs., Inc.*, 925 F.3d at 893.

The distribution method treats the class members equitably. The Parties have reasonably justified the increased point values given to Opt-in Plaintiffs and those working weeks post-January 30, 2020, based upon Defendants' distinct defense strategy concerning employees who worked prior to this date. (*See* Agreement 19-20; Foster Decl. ¶ 14). This factor, therefore, supports settlement.

All factors under Rule 23(e)(2) support granting preliminary approval of the Agreement. Next, the Court will analyze the agreement in accordance with the Sixth Circuit's factors under *UAW*, 497 F.3d 615.

### 4.    *Analysis under the Six Circuit's Factors*

#### a.    **Risk of Fraud or Collusion**

As mentioned previously, the Parties represent that they agreed to settle the claims after "continued good faith arm's-length discussions." (Agreement 2). "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Green*, 2022 WL 1240432, at *4 (citation omitted). There is nothing to suggest fraud or collusion in the current case; therefore, this factor weighs in favor of approval.

#### b.    **Complexity, Expense, and Likely Duration of Litigation**

The Parties have already engaged in three years of costly litigation, including a settlement conference before the Magistrate Judge, a mediation, and continued negotiations. (Agreement 2). The case presents a fact-intensive wage and hour dispute, and the Parties would likely incur

substantial future litigation expenses if they were forced to go to trial. This factor supports approving the settlement.

### c.    Amount of Discovery Engaged in by the Parties

"If the parties have engaged in discovery, then a settlement is more likely to be fair and reasonable under the circumstances." *Green*, 2022 WL 1240432, at *5 (citation omitted). In the current case, the Parties "reached the Settlement after . . . extensive discovery concerning the claims and defenses at issue[,]" including "depositions, interrogatories, extensive document review and data analysis . . . ." (Foster Decl. ¶¶ 8, 20). Furthermore, the Parties have stated their initial settlement conference in 2023 was the result of "extensive and contentious litigation and discovery . . . ." (Agreement 18). This factor supports approval because the Parties have engaged in substantial discovery since the onset of this litigation.

### d.    Likelihood of Success on the Merits

"[T]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Counsel for both Plaintiff and Defendants have acknowledged the inherent risks in proceeding with litigation. (Foster Decl. ¶ 21; Agreement 2). By acknowledging the risks of further litigating, Defendants have implicitly recognized that Plaintiff's claims may be potentially meritorious. Therefore, this factor supports approval of the settlement.

### e.        Opinions of Class Counsel and Class Representatives

Foster and Plaintiff assert that the Agreement "is in the best interests of the Settlement Class, and that the relief provided is fair, reasonable, and adequate . . . ." (Foster Decl. ¶ 21). Furthermore, "Plaintiff participated actively throughout settlement discussions . . . and has indicated his support for the Settlement by signing the Settlement Agreement." (Foster Decl. ¶ 23). Thus, this factor weighs in favor of approval.

### f.        Reaction of Absent Class Members

The absent class members have not yet been given the opportunity to respond to the Agreement, so this factor is neutral at this time. *See Green*, 2022 WL 1240432, at *5 ("At the pre-notice stage, the Court does not yet know how absent class members will respond.").

### g.        Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530 (quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). "[I]f the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage or computation of back wages, a court may approve a settlement to 'promote the policy of encouraging settlement of litigation.'" *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *9 (E.D. Ky. Oct. 23, 2008) (citing *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab., Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d

1350, 1353 (11th Cir. 1982)).  There is no reason in the current case to refrain from adhering to this policy.  The final factor also supports approval.

A balancing of both the Rule 23(e) and Sixth Circuit factors supports preliminarily approving the proposed Agreement as "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2). The Parties' motion is granted.

## C.    The Proposed Settlement's Notice Materials Satisfy the Rule 23 Requirements

Now that both the proposed Settlement Class has been preliminary certified under Rule 23 and the Agreement has been preliminarily approved, the Court must analyze the adequacy of the Parties' proposed Notice materials.  Specifically, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ."  Fed. R. Civ. P. 23(e)(1)(B).  For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Notice may be made by United States mail and must, in easily understood language, contain the following information:

> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

In the current case, the proposed Notice meets all of these requirements.  The Notice conveys that this is a class action settlement concerning "Defendants' [alleged] failure to pay overtime compensation [which] violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and Kentucky state law."  (Agreement 17-18).  It defines a class member "a current or

former truck driver employee of Ray Jones Trucking, Inc. who was not paid at an overtime rate of pay for your work in excess of forty hours in one or more workweeks from January 8, 2017, through November 20, 2024 . . . ." (Agreement 17). The Notice discusses the various claims, issues, and defenses involved in the action. (Agreement 18-19). It informs class members that they have a right to hire a lawyer separate from class counsel to represent them. (Agreement 22). The proposed Notice also ensures that class members know they may opt out of the settlement and explains the process and consequences if they choose to do so. (Agreement 21). Although it does not explicitly refer to Rule 23(c)(3), the Notice contains explicit language concerning the binding effect of the settlement and specific claims a member releases by agreeing to the settlement. (Agreement 20-21). Thus, all requirements of Rule 23(c) are met, and the Court approves the proposed Notice.

### D.    <u>The Proposed Schedule is Reasonable</u>

The Parties propose the following schedule for notice and final approval of the settlement:

| | |
|---|---|
| Defendants send CAFA Notice | Within ten (10) business days after the submission of the Settlement Agreement to the Court. |
| Defendants Provide Settlement Class Contact Information | Within ten (10) business days, or as soon as practicable, after entry of the Court's Preliminary Approval Order. |
| Notice Sent by Class Counsel | Within ten (10) days of receiving the Settlement Class List. |
| Plaintiff's Motion for Approval of Attorneys' Fees, Costs, and Service Awards | Due ten (10) business days before the Objection and Opt-Out Deadline stated in Notice to Class Members. |
| Deadline to postmark objections or requests for exclusion | Forty-five (45) after the Notice of Settlement is initially mailed by Class Counsel. |
| Motion for Final Approval of Class Action | Due ten (10) business days before Final Approval Hearing Date. |

| Hearing on Final Approval of Settlement (Fairness Hearing) | Approximately one hundred (100) days after entry of the Court's Order on this Motion, at the Court's discretion. Based on the above schedule, if the Court grants preliminary approval in August, 2025 and the Court's schedule allows a final approval hearing to be scheduled in November or December, 2025, the Parties request a final approval hearing in November or December, 2025. |
|---|---|

(Joint Mot. 2-3). Seeing no issue with this timeline, the Court approves it and grants the Parties' motion.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    The Parties' joint motion for preliminary approval of a class action certification and settlement (DN 109) is **GRANTED** and their previous motion (DN 106) is **DENIED AS MOOT**. The Settlement Class preliminarily satisfies the certification requirements of Fed. R. Civ. P. 23(a) and 23(b)(3); and Plaintiff, the Settlement Class Representative, and Defendants conditionally consent to the conditional certification of the Settlement Class, solely for the purpose of settlement of the claims raised by Plaintiff in this case. The settlement set forth in the Agreement between the Parties is preliminarily approved as fair, reasonable, adequate, within the range of possible approval, and in the best interests of the Rule 23 class, subject to a hearing for final approval.

2.    Class Members: For the purposes of the settlement, a Settlement Class member shall be defined as any current and former truck driver employee of Ray Jones Trucking, Inc. who was not paid at an overtime rate of pay for such employee's work in excess of forty hours in one or more workweeks from January 8, 2017, though November 20, 2024.

3.    Class Representatives and Class Counsel: Plaintiff shall be appointed as the Settlement Class Representative and Foster shall be appointed as Class Counsel.

4.     <u>Nullification</u>:  This Order will be void and of no force or effect if the Agreement is not finally approved by the Court or if the Agreement, after being finally approved by the Court, is invalidated on appeal or terminated pursuant to its own terms.

5.     <u>Class Notice</u>:  The Notice materials (including the opt-out statement) are approved. The Court orders that Defendants provide the Class Counsel with a list, in electronic form, of the Rule 23 Settlement Class members, including each individual's last known address, within ten business days after the entry date of this Order.  The Court orders that the Class Counsel mail via first-class mail and, to the extent email addresses are known, email the Notice materials to the Rule 23 Settlement Class members within ten days after Defendants produce such list with addresses. Any member of the Rule 23 Settlement Class who wishes to opt out of the class must do so by properly completing the opt-out request and mailing or emailing it to the Class Counsel.  The Opt-Out Statement must be sent and post-marked within 45 calendar days after the date on which Class Counsel mails the Notice to class members.  All of the Rule 23 class members who do not timely and properly exclude themselves from the class will be bound conclusively by all terms of the Agreement, if finally approved, and by any judgment entered upon final approval.  The Class Counsel will provide Counsel for Defendants returned opt-out statements, and will file them with the Court, as set forth in the Agreement.

6.     <u>Fairness Hearing</u>:  The Court shall conduct a Fairness Hearing regarding the proposed settlement on **December 16, 2025, at 11:00 AM CT** at the **U.S. Courthouse, 423 Frederica St., Owensboro, Kentucky**.  Any Rule 23 class member who wishes to object to the Agreement will be heard at that time.  Objections must be made in writing by mailing or emailing such objections to the Class Counsel and must be received by the Class Counsel within 45 days after the date on which the Class Counsel mails the Notice to Rule 23 class members.  Each

objection must include the objector's name, address, telephone number, email address, and signature.  Each objecting Rule 23 class member must state the reasons for objection to the Agreement.  If the objecting Rule 23 class member wishes to speak at the hearing, the written objection must state so.  Any objecting Rule 23 class member who fails to properly or timely provide his or her objection to Class Counsel will not be heard during the Fairness Hearing and such objection will not be considered by the Court.  Class Counsel will file objections with the Court and provide them to Counsel for Defendants as set forth in the Agreement.

7.      Order for Settlement Purposes:  The findings and rulings in this Order are made for the purposes of settlement only and may not be cited or otherwise used to support the certification of any contested class or subclass in this action or any other action.

8.      Stay:  All proceedings in this action, other than such proceedings as may be necessary to carry out the terms and conditions of the Agreement, are stayed and suspended until further order of the Court.  Pending final approval of the Agreement, Plaintiff is barred from commencing, prosecuting, continuing, or asserting in any forum, either directly or indirectly, on their own behalf or on behalf of any class or other person, any released claim against any party (as those terms are defined in the Agreement).

9.      Use of Agreement and Ancillary Items:  Neither the Agreement (whether or not it is finally approved), nor any ancillary documents, actions, statements, or filings in furtherance of settlement (including matters associated with the mediation) will be admissible or offered into evidence in this action or any other action with respect to any issue or dispute, including but not limited to, for the purpose of establishing or supporting any claims that were raised or could have been raised in this action or are similar to such claims.  Likewise, neither the Agreement (whether or not it is finally approved), nor any ancillary documents, actions, statements, or filings in

furtherance of settlement (including matters associated with the mediation) shall be construed as, offered, or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties or their counsel of any liability, fault, wrongdoing, omission, or damage.

10.     <u>Attorney's Fees and Awards</u>:  The submissions of Plaintiff's Motion for Approval of Attorneys' Fees, Costs, and Service Awards shall be filed with the Court no later than ten business days before the Objection and Opt-Out Deadline stated in Notice to Class Members.

Greg N. Stivers, Chief Judge
United States District Court

August 21, 2025

cc:     counsel of record