UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:22-CV-00005-GNS-HBB

SAMUEL BACK
as Class Representative                                                                                          PLAINTIFF

v.

RAY JONES TRUCKING, INC. et al.                                                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Parties' Joint Motion for Final Approval of Settlement (DN 116) and Plaintiff's Motion for Attorney's Fees, Litigation Costs, and Service Award (DN 114). The motions are ripe for adjudication.

**I.        STATEMENT OF FACTS AND CLAIMS**

Plaintiff Samuel Back ("Plaintiff") brought this suit on January 10, 2022, on behalf of himself and all others similarly situated, against Defendants Ray Jones Trucking, Inc., ("Ray Jones") and individuals Teresa Jones, Grant Jones, and Steve Jones (collectively, "Defendants"). (Compl. ¶¶ 1, 4, DN 1). Ray Jones is a Kentucky corporation that transports commercial materials including coal within the state of Kentucky. (Compl. ¶¶ 6, 11, 45). Plaintiff was employed as a truck driver for Ray Jones, and he contends that he and many other employees were denied overtime compensation due to them under the Fair Labor Standards Act ("FLSA") and the Kentucky Wage and Hour Act ("KWHA"). (Compl. ¶¶ 1, 70, 85).

The Parties jointly proposed a settlement agreement ("Agreement"). (Agreement, DN 109-1). Under that Agreement, the gross settlement amount is $450,000, and, after deducting fees, costs, and awards, the net settlement amount is approximately $275,000. (Agreement 3-4, 10-11).

1

The average payment to a class member would be approximately $5,100.54. (Foster Decl. ¶ 17, DN 116-1). The Settlement Class includes fifty-four individuals—no one objected to the Agreement or opted out. (Foster Decl. ¶¶ 14, 21, DN 116-1).

This Court preliminarily approved the Parties' Agreement. (Mem. Op. & Order, DN 111). The Parties now move for final approval. (Joint Mot. Final Approval, DN 116). Plaintiff also moves for attorney's fees, litigation costs, and a service award. (Pl.'s Mot. Fees, Costs, & Award, DN 114). That motion is unopposed.

## II.    JURISDICTION

The Court has subject-matter jurisdiction because a federal question is presented. *See* 28 U.S.C. § 1331. In addition, the Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(a).

## III.    DISCUSSION

### A.    Conditional Certification of the Settlement Class

The Parties move to certify the class for the purposes of settlement. (Joint Mot. Final Approval 1). The Settlement Class is comprised of "all current and former truck driver employees of Ray Jones Trucking, Inc. who were not paid at an overtime rate of pay for such employee's work in excess of forty hours in one or more workweeks from January 8, 2017[,] through November 20, 2024." (Joint Mot. Final Approval 1-2). This Court has preliminarily approved this class certification. (Mem. Op. & Order, DN 111). Additionally, this Court previously certified a Rule 23 class with the same class-member definition as the proposed Settlement Class—the only difference is the applicable class period. (*See* Joint Am. Mem. Supp. Mot. Preliminary Approval 25, DN 110).

Granting Rule 23 class certification involves a two-step process: First, a court must conduct "a rigorous analysis[] that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). If the class meets all four Rule 23(a) requirements, the Parties must also demonstrate that "the proposed class [] [] meet[s] at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citations omitted).

    **1.** *Rule 23(a) Analysis*

Rule 23(a) requires: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). All of these requirements must be satisfied, or certification must be denied. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004) (citation omitted).

The first requirement for class certification is that "the class is so numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a)(1). As the Sixth Circuit has explained:

> There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1).

*Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (internal citation omitted) (citation omitted). The Court previously determined that the initial Rule 23 class, with an anticipated fifty-two class members, was "sufficiently numerous to make joinder impracticable." (Mem. Op. & Order 12, DN 101 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976) (citation omitted))). The Settlement Class now consists of fifty-four members. (Joint Mem. Supp. Mot. Final Approval 2, DN 116-2). Therefore, the proposed Settlement Class satisfies Rule 23's numerosity requirement.

### a. Commonality

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In its order certifying the initial Rule 23 class, this Court determined that questions regarding "whether the MCA exception applies" and "whether the proposed class of plaintiffs were wrongfully denied overtime compensation" are common issues among class members. (Mem. Op. & Order 6-7, DN 111; Mem. Op. & Order 10, DN 101). Because the class definition has not changed, the commonality requirement is also satisfied for the Settlement Class.

### b. Typicality

Third, a court must consider whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). This Court previously determined that the typicality requirement was met because "all proposed class members were employees of Ray Jones during the specified period and were allegedly injured in the same way by being denied overtime compensation in violation of the FLSA and KHWA." (Mem. Op. & Order 7, DN 111; Mem. Op. & Order 13-14, DN 101). Just as Plaintiff's claims continue to contain common questions of law or fact, the claims remain typical of those for the Settlement Class.

### c. Adequacy of Representation

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This Court has already found Plaintiff to be an adequate representative. (Mem. Op. & Order 8, 20, DN 111; Mem. Op. & Order 22-23, DN 101).

### 2. *Rule 23(b) Analysis*

The Parties seek to conditionally certify the class under Rule 23(b)(3). (Joint Mem. Supp. Mot. Final Approval 19). Rule 23(b)(3) "requires the district court to find 'that the questions of law or fact common to class members predominate over any questions affecting only individual members' and that the class action is 'superior to other available methods' to adjudicate the controversy fairly and efficiently." Fed. R. Civ. P. 23(b)(3); *In re Whirlpool*, 722 F.3d at 850-51. As noted in its preliminary approval, this Court has already certified the initial class under Rule 23(b), and the Settlement Class mirrors the previously approved class. (Mem. Op. & Order 9, DN 111; Mem. Op. & Order 17, DN 101).

In conclusion, because the Rule 23 requirements are met, the Settlement Class is conditionally certified.

### B. Notice

Foster mailed the corrected class notice, which this Court approved, to the class members on September 26, 2025. (Foster Decl. ¶¶ 20, 22, DN 116-1; Mem. Op. & Order 19, DN 111). This Court finds that notice has been effectuated pursuant to the terms of the Agreement.

### C. Settlement Approval

"Class action suits may be settled only with court approval." *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *2 (W.D. Ky. Apr. 27, 2022) (citing Fed. R. Civ. P. 23(e)). Settlement approval is a two-step process: (1) "[t]he judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing"; and (2) "[i]f so, the final decision on approval is made after the hearing." *Ann. Manual Complex Lit.* (Fourth) § 13.14 (2019); *see also Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66

(6th Cir. 2001)). This Court preliminarily approved the Agreement, held a hearing, and now must decide whether to give final approval. In making that determination, this Court must consider the factors outlined by Rule 23(e)(2) and Sixth Circuit precedent.

        1.    *Rule 23(e)(2) Factors*

The Court must find that the settlement agreement is "fair, reasonable, and adequate." *Whitlock v. FSL Mgmt., L.L.C.*, 843 F.3d 1084, 1093 (6th Cir. 2016) (citing Fed. R. Civ. P. 23(e)). Rule 23(e) outlines four factors for courts to consider in making this determination:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

        a.    **Adequacy of Class Representative and Class Counsel**

The Court must determine whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Plaintiff and Foster have litigated the case for over three years and reached a settlement "only after very substantial discovery and motion practice." (Foster Decl. ¶¶ 8-9, DN 116-1). Moreover, as further discussed below, "Plaintiff has demonstrated his commitment to this pursuit of this litigation and the collective interests of the Settlement Class." (Foster Decl. ¶ 37, DN 116-1). Foster's firm has experience with similar "class and collective actions under the federal and state wage laws." (Foster Decl. ¶ 5, DN 116-1). As this Court previously found, there is ample evidence that both Plaintiff and

6

Foster would represent this class well and continue to pursue these claims zealously in the event the case continued to trial, so this factor supports approval.  (Mem. Op. & Order 11, DN 111).

### b. Arm's Length Negotiation

Foster indicates that "[s]ettlement was only reached through the efforts of the Magistrate Judge conducting a full day settlement conference in Bowling Green, and thereafter the parties attending a separate mediation before an experienced independent mediator, Thomas Williams, in Louisville, and the parties engaging in further arm's-length negotiations thereafter."  (Foster Decl. ¶ 9, DN 116-1).  Thus, this factor supports approval.

### c. Adequate Relief Provided to the Class

#### i. Costs, Risks, and Delay of Trial and Appeal

Foster "believe[s] that the Settlement is in the best interests of the Settlement Class . . . especially when considering the costs, risks, and delay in continued litigation."  (Foster Decl. ¶ 27, DN 116-1).  Foster acknowledges that the settlement "avoids the multitude of risks to establishing liability and recovering damages, and provides an immediate, certain, and meaningful cash recovery of unpaid wages and overtime . . . ."  (Foster Decl. ¶ 27, DN 116-1).  Because Plaintiff and Foster accounted for risks and costs of further litigating the claims when arriving at a final settlement figure, this subfactor weighs in favor of approval.

#### ii. Effectiveness of Proposed Distribution Method

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  *Newberg on Class Actions* § 13:53.  In this instance, class members are not required to "submit claim forms or other documents to participate in the recovery," so payment may be made automatically.  *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 663 (N.D. Ohio 2023).  Therefore, "no portion

of the settlement amount will revert to Defendants." *See In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act & Wage & Hour Litig.*, No. 3:14-CV-290-DJH, 2024 WL 5362024, at *4 (W.D. Ky. Dec. 23, 2024). This subfactor supports approval.

### iii. Terms of Attorney's Fees

Attorneys' fees, litigation costs, and Plaintiff's service award are discussed below; because the Court finds these terms reasonable, this subfactor also supports approval.

### d. Equitable Treatment of Class Members

Settlement funds will be distributed based on a formula that assigns class members point values based on employee tenure. (Agreement 8-9). The point values also reflect factual differences between time periods and whether the class member opted-in to assert a FLSA claims. (Joint Mem. Supp. Mot. Final Approval 9-10). This type of formula has been approved by this Court in other class action settlements. *See Southard v. Newcomb Oil Co., LLC*, No. 3:21-CV-607-DJH-CHL, 2024 WL 4263639, at *1 (W.D. Ky. Sept. 23, 2024); *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-CV-44-DJH, 2016 WL 7320890, at *1 (W.D. Ky. Dec. 15, 2016). "Neither the Federal Rules of Civil Procedure nor the Supreme Court requires that settlements offer a pro rata distribution to class members; instead the settlement need only be "fair, reasonable, and adequate.'" *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 628 (6th Cir. 2007) (citations omitted). Because the distribution formula considers the varying strength of class members' claims and the additional labor and risks borne by opt-in plaintiffs, the class members are treated equitably. (Joint Mem. Supp. Mot. Final Approval 10-11). Accordingly, this factor weighs in favor of approval.

All factors under Rule 23(e)(2) support granting final approval of the Agreement.

### 2.  *Sixth Circuit Factors*

The Sixth Circuit provides the following factors to aid in determining whether a settlement agreement is "fair, reasonable, and adequate" under Rule 23(e):

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631 (6th Cir. 2007) (citations omitted). "These factors are also used to determine the reasonableness of settlement agreements under the FLSA." *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *4 (W.D. Ky. Apr. 27, 2022) (citing *Does 1-2 v. Déjà vu Servs., Inc.*, 925 F.3d 886, 894-95 (6th Cir. 2019)).

#### a.  **Likelihood of Success and Merits**

"[T]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)). Both Plaintiff and Defendants acknowledge the risks of further litigation, implicitly recognizing that Plaintiff's claims may be meritorious. (Agreement 2). Thus, this factor weighs in favor of approval.

#### b.  **Fraud or Collusion**

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Green*, 2022 WL 1240432, at *4 (citation omitted). There is nothing to suggest fraud or collusion in the current case; therefore, this factor weighs in favor of approval.

### c. Complexity, Expense, and Likely Duration of the Litigation

Over the last three years, the Parties have expended considerable resources litigating this fact-intensive wage and hour dispute. (*See* Mem. & Order 15-16, DN 111). "If forced to litigate this case further, the Parties would continue to engage in costly litigation and motion practice." *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *5 (W.D. Ky. Mar. 17, 2023). Accordingly, this factor supports approval.

### d. Amount of Discovery Engaged in by the Parties

"If the parties have engaged in discovery, then a settlement is more likely to be fair and reasonable under the circumstances." *Green*, 2022 WL 1240432, at *5 (citation omitted). The Parties settled after extensive discovery, including depositions, interrogatories, and data analysis. (Foster Decl. ¶ 9, DN 116-1). Indeed, the Parties have produced tens of thousands of pages of documents. (Foster Decl. ¶ 9, DN 116-1). This factor weighs in favor of approval.

### e. Opinions of Class Counsel and Class Representatives

Foster "believe[s] that the Settlement is in the best interests of the Settlement Class, and that the relief provided is fair, reasonable, and adequate . . . ." (Foster Decl. ¶ 27, DN 116-1). Foster also reports that "Plaintiff has indicated his support for the Settlement, including by signing the Settlement Agreement." (Foster Decl. ¶ 35, DN 116-1). Thus, this factor supports approval.

### f. Reaction of Absent Class Members

No class member objected to the Agreement or requested exclusion. (Foster Decl. ¶ 21, DN 116-1). Because "[t]he Court considers the fact that not one class member objected to the settlement agreement to be most persuasive," this factor weighs heavily in favor of approval. *Ditsworth v. P & Z Carolina Pizza*, No. 1:20-CV-00084-GNS, 2021 WL 2941985, at *4 (W.D.

Ky. July 13, 2021) (citing *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000)).

### g. Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). Therefore, the final factor also supports approval.

A balancing of both the Rule 23(e) and Sixth Circuit factors supports approving the Settlement as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Parties' motion is granted.

### D. Fees, Costs, & Award

Plaintiff moves for attorney's fees, litigation costs, and a service award. (Pl.'s Mot. Fees, Costs, & Award).

#### 1. *Attorney's Fees*

The Agreement states that Foster "will file a motion for approval of attorneys' fees and costs prior to final approval and pursuant to the schedule ordered by the Court. Class Counsel may apply for attorneys' fees in the amount of up to one-third (⅓) of the Gross Settlement Amount as compensation for all work performed . . . ." (Agreement 10). Foster now seeks attorney's fees of $150,000, which is one-third of the total $450,000 settlement fund.[1]

---

[1] The Agreement provides that Foster's attorney's fees are to be reduced if one or more members chooses to opt out of the settlement daward. (Agreement 9). No class member has requested exclusion. (Pl.'s Mot. Fees, Costs, & Award 1).

11

"In general, there are two methods for calculating attorney's fees: the lodestar and the percentage-of-the-fund." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). "To determine the 'work done,' courts often employ the 'lodestar approach,' which multiplies the number of hours reasonably expended in litigation by a 'reasonable hourly rate,' which the court can then, 'within limits, adjust . . . to reflect relevant considerations peculiar to the subject litigation.'" *He v. Rom*, 751 F. App'x 664, 673 (6th Cir. 2018) (internal citation omitted) (citation omitted). To reward the results achieved, the Court employs the percentage-of-the-fund method. *See id.* In performing this analysis, "courts must calculate the ratio between attorney's fees and benefit to the class" where "[a]ttorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class . . . ." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). "District courts have the discretion to select the particular method of calculation, but must articulate the reasons for adopting a particular methodology and the factors considered in arriving at the fee." *Id.* at 280 (internal quotation marks omitted) (citations omitted).

"[C]ourts in the Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common fund cases." *In re Cardizem*, 218 F.R.D. at 532 (citations omitted). "The advantages of the percentage of the fund method are that: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation." *Gascho*, 822 F.3d at 279 (internal quotation marks omitted) (citation omitted). Moreover, our sister court has observed that:

> The lodestar method should arguably be avoided in situations where such a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result. Courts and commentators have been skeptical of applying the formula in common fund cases. . . . [M]any courts have strayed from using lodestar in common fund cases

12

and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees.

*Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828, 832-33 (E.D. Mich. 1998) (internal citations omitted). This Court will therefore use the percentage-of-the-fund method to assess the reasonable of Plaintiff's request and use the lodestar method to cross-check. *See In re Flint Water Cases*, 583 F. Supp. 3d 911, 930 (E.D. Mich. 2022).

The Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citation omitted). The reasonableness inquiry is guided by the following factors:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (citation omitted).

In this instance, all factors support the reasonableness of Foster's requested attorney's fees. Foster has obtained meaningful cash recovery for class members—on average, each class member will recover around $5,000. (Pl.'s Mem. Supp. Mot. Fees, Costs, & Award 8 n.6, DN 114-3). "[T]he value of the benefit to class members is significant, considering 'that success [on the merits] is not guaranteed.'" *Southard*, 2024 WL 4263639, at *4 (citation omitted). This litigation was complex, and both parties are represented by qualified counsel. (*See* Pl.'s Mem. Supp. Mot. Fees, Costs, & Award 10). Foster has worked for nearly four years on a contingent fee basis, taking "the risk of not being compensated, a factor that cuts significantly in favor of awarding [him] a significant fee recovery here." *Kritzer v. Safelite Sols., LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (citation omitted). "Society certainly benefits from

13

'incentivizing attorneys to assist in combatting' alleged violations of minimum-wage laws." *Thompson v. Seagle Pizza, Inc.*, No. 3:20-CV-16-DJH-RSE, 2022 WL 1431084, at *12 (W.D. Ky. May 5, 2022) (citation omitted).

A lodestar cross-check also supports Foster's fee request. Foster's firm incurred $97,055.83 in time-based charges, based on Foster's rate of $375 per hour for 240.9 hours and his non-attorney employees' rate of $50 per hour for 248.9 hours. (Foster Decl. ¶¶ 17-19, DN 114-1). Because Foster worked on a contingent fee basis, a lodestar multiplier would be appropriate. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 761 (S.D. Ohio 2007) ("A court determines an appropriate lodestar multiplier by assessing a variety of factors, including the nature of the case, the market for such legal services, the risk involved, and the results achieved, such that the Court rewards a lead counsel that takes on more risk, demonstrates superior quality, or achieves a greater settlement with a larger lodestar multiplier." (citations omitted)). The lodestar multiplier necessary for Foster's requested attorney's fees would be approximately 1.5 (i.e., $150,000 / $97,055.83). "In wage and hour collective and class actions, lodestar multipliers between 1 and 3 are common." *O'Bryant v. ABC Phones of N.C., Inc.*, No. 19-CV-02378-SHM-TMP, 2021 WL 5016872, at *6 (W.D. Tenn. Oct. 28, 2021).

Finally, the percentage sought is not unreasonable. Foster seeks one-third of the total settlement amount. "[C]ourts within this circuit have found one-third common fund attorney's fee awards to be reasonable in similar complex failure-to-pay-overtime cases." *Ware v. CKF Enters., Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) (citations omitted). Accordingly, attorney's fees of $150,000 are reasonable.

### 2. *Litigation Costs*

Foster seeks $4,571.10 in reimbursement for costs incurred litigating the settled claims, which is less than the $5,000 that the Agreement permits Foster to seek.[2] (Pl.'s Mem. Supp. Mot. Fees, Costs, & Award 13; Agreement 10). "[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the Parties' agreement." Fed. R. Civ. P. 23(h). Indeed, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) (citation omitted). "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem*, 218 F.R.D. at 535. Foster's expenses—the cost of filing fees, postage, depositions, mediation, and attorney travel—are reasonable. (Foster Decl. ¶ 14 n.3). The Court therefore approves reimbursement of Foster's costs.

### 3. *Service Award*

Plaintiff seeks a service award of $20,000, in accordance with the Agreement. (Agreement 11). "Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). "Such awards are not uncommon, and courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at

---

[2] No class member objected. (Pl.'s Mem. Supp. Mot. Fees, Costs, & Award 13). Additionally, because the actual amount sought to be reimbursed is less than the approved amount, class members will receive a slightly higher amount than stated in the notice. (Pl.'s Mem. Supp. Mot. Fees, Costs, & Award 13).

15

*7 (N.D. Ohio, Mar. 8, 2010) (internal quotation marks omitted) (citation omitted). "The Sixth Circuit has held that incentive awards to class representatives may be appropriate in some cases, but has not defined circumstances justifying incentive awards." *In re Sketchers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013) (citation omitted). Courts within the Sixth Circuit have considered the following factors when deciding whether to approve an incentive award for a class representative:

> (1) the action taken by the Class Representatives to protect the interests of the Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

*Ross*, 2016 WL 7320890, at *5 (citation omitted).

Plaintiff worked with his counsel to achieve a successful resolution to this litigation, which took significant effort and time (at least fifty hours). (Back Decl. ¶ 19, DN 144-2). As documented in Plaintiff's declaration, he was involved in every step of the litigation. (Back Decl. ¶¶ 11-21). Moreover, Plaintiff risked retaliation from Defendants and harm to his reputation, which could impact future employment opportunities. (Back Decl. ¶ 9). Thus, the above factors weigh in his favor.

The requested service award—$20,000—is comparable to service awards approved in other cases. *See, e.g.*, *Sellards v. Midland Credit Mgmt., Inc.*, No. 1:20-CV-02676, 2023 WL 3869023, at *2 (N.D. Ohio May 2, 2023) (awarding $15,000). Additionally, $20,000 is around 4% of the total settlement amount and less than ten times the average payment to class members. (Pl.'s Mem. Supp. Mot. Fees, Costs, & Award 16 n.7). A sister court has found that an incentive payment "10 times that of the class members . . . does not reflect the type of disproportionality typically requiring the court to step in." *Sellards*, 2023 WL 3869023, at *6. The court noted that "[w]henever the sum needed to make individual class members whole is relatively small, even a

modest incentive payment, as here, will always be a large multiple of the compensatory payment to class members." *Id.* The Court therefore approves Plaintiff's service award.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. The provisionally certified class is now finally certified pursuant to Fed. R. Civ. P. 23 for purposes of settlement only.

2. The Notice given to the Settlement Class was the best notice practicable under the circumstances, including individual notice to all Settlement Class Members who could be identified through reasonable effort, and constituted due and sufficient notice to all persons. The form and method of the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, applicable case precedent, and due process. Thus, it is hereby determined that all Settlement Class Members are bound by this Final Approval Order.

3. The Parties' Joint Motion for Final Approval of Settlement (DN 116) is **GRANTED**.

4. Plaintiff's Motion for Attorney's Fees, Litigation Costs, and Service Award (DN 114) is **GRANTED**.

5. Without affecting the finality of this Final Approval Order, in any way, this Court hereby retains continuing jurisdiction over the administration, consummation and enforcement of the Settlement Agreement.

6. In accord with the provisions of the Settlement Agreement, following the Acceptance Period, the Parties shall file a joint Notice, notifying the Court that the Acceptance Period has concluded, as well as a notice of voluntary dismissal with prejudice of the alleged FLSA

claims pursuant to Federal Rule of Civil Procedure 41.  Once the Notice is filed, and following the Parties' Rule 41 dismissal of FLSA claims, the Court will dismiss this case with prejudice.

**This is a final and appealable order.  There is no just cause for delay.**

Greg N. Stivers, Judge
United States District Court
December 17, 2025

cc: counsel of record

18